No. 46,199

ELLA M. CALVERT, Widow of Richard M. Calvert, Deceased, *Claimant-Appellant*, v. DARBY CORPORATION and SECOND INJURY FUND, Respondents, and TRAVELERS INSURANCE COMPANY, Insurance Carrier, *Appellees*.

(483 P. 2d 491)

Opinion filed April 10, 1971.

*Douglas Lancaster*, of Wagner, Leek & Mullins, of Shawnee Mission, argued the cause and was on the brief for appellant.

*Frank Sabatini*, of Topeka, argued the cause, and was on the brief for The Kansas Second Injury Fund, appellee. *Robert A. Unverferth*, of Kansas City, argued the cause and was on the brief for The Darby Corporation and Travelers Insurance Company, appellees.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from the district court's denial of a claim under the Workmen's Compensation Act for death caused by a myocardial infarction. The claimant-appellant, Ella M. Calvert, is the widow of Richard M. Calvert, the deceased workman, and sought an award of workmen's compensation.

The decedent had a history of heart ailment dating back to November, 1962. He was then hospitalized and away from his work until February, 1963. In May, 1963, he was allowed to return to his department with the Darby Corporation, but only in a supervisory capacity. Calvert was cautioned several times by his physician not to engage in physical exertion or physical work. He was hospitalized again for his heart ailment, and was released from the hospital on August 22, 1964. He returned to work for the Darby Corporation with a letter from his physician directed to his employer, to the effect he was not to do any work except in a supervisory capacity.

On May 28, 1966, in order to obtain the protection afforded by the Second Injury Fund, the Darby Corporation filed notice with

the workmen's compensation director pursuant to K. S. A. 44-567 (since amended), that the decedent was a handicapped person as defined in the Second Injury Act. The notice detailed the decedent's cardiac handicap, and described the exact condition that caused his death.

For two years prior to November, 1967, Calvert had been employed by the Darby Corporation as a "leadman." His duties were those of a subforeman to supervise the work of crews under the direction of a foreman, but they did not include engaging in physical labor.

On the evening of his death, November 27, 1967, the decedent reported to work and was assigned to supervise other men in unloading a carload of steel channeling. Approximately an hour was consumed in switching gondola cars to get them in position for unloading. This required the decedent to signal the one moving the cars to place them in a proper position for unloading. His job involved only standing and signaling to position the cars. After the switching was complete, the decedent and the three workmen whom he was supervising proceeded to unload the cars. The actual unloading of the steel channels was done by an overhead crane. The crane would pick up the steel channels from the gondola car and place them in a nearby pile on the ground. The work required the decedent to raise one arm after the beam came down and then guide it with this one arm to its position on the pile. There was no lifting whatsoever. After the beam was placed in position on the pile, the decedent would bend over and release the hook on his end of the beam. Releasing the hook involved sliding it out from the beam with one hand. The decedent would then stand and wait for some five minutes until another beam was to be placed in position. He followed this work pattern for slightly more than a half hour period and assisted in unloading six beams.

The decedent and his fellow workmen then took a coffee break and walked from the place where they had been working to a coffee machine at the office of respondent. The decedent obtained a cup of coffee and secured a package of cigarettes from a cigarette dispenser. For the next ten or fifteen minutes, he proceeded to joke and laugh with his fellow workmen and the trainmen who were there. After he drank the coffee and while smoking a cigarette, he collapsed and apparently died at once.

The claimant bases her claim on the proposition that under the

1967 amendment to K. S. A. 44-501, recovery of compensation may be had where death was caused by a workman doing more than his usual work in the regular course of his employment. The addition which amended the statute reads:

". . . Compensation shall not be paid in the case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment."

In denying compensation, the district court found,

". . . that all of the findings and award of the examiner as approved by the Workmen's Compensation Director of the State of Kansas should be and hereby are approved, with costs taxed against respondent and the second injury fund."

The director, in affirming the award of the examiner, concluded:

"The primary issue on review was whether or not the deceased suffered personal injury by accident arising out of and in the course of his employment for the respondent as that term is presently defined by law, particularly K. S. A. [1970 Supp.] 44-501. This is a heart case and before heart cases are compensable under the 1967 amendment to the Kansas Workmen's Compensation Act, it must be shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's usual employment. The director finds that the claimant has not sustained the burden of proving that the decedent did anything more than the usual amount of work or made more than the usual amount of exertion on the day he suffered a fatal heart attack."

The examiner found that the testimony was to the effect the deceased workman was doing his regular work. In other words, he was doing nothing but the usual job which precluded the claimant from benefits.

The issue before this court is simply whether the findings of the district court as set out above and its judgment, are supported by substantial competent evidence.

A substantial amount of the testimony before the examiner consisted of depositions of fellow workmen. They testified to the effect that it was not unusual for Calvert to do the type of work he was doing on the day of his death. He often would aid in the unloading of cars whenever they arrived and when he felt like it, even though he was not supposed to engage in that type of work.

James F. Roby testified as follows:

"Q. Do you yourself, know what he was—immediately preceding or before that coffee break, where he had the attack?

"A. They had been unloading steel and he was unhooking a hook off one end of the steel.

"Q. Was that unusual for Mr. Calvert?

"A. No.

"Q. Was that unhooking of the hook in any way strenuous work?

"A. The hook would probably weigh maybe ten pounds.

"Q. Is it considered rather light kind of work?

"A. Yes, I would say a seven or eight-year old boy could unhook it if I would show him how."

Harold Green testified as follows:

"Q. Did he do this type of work regularly or was it other work?

"A. He didn't do too much of it, no, he would do some of it when he felt like it, you know, but he wasn't supposed to, but he would do it. You couldn't keep him out of it, time drags on his hands, he wanted to be doing something, he didn't have to do it, but you couldn't keep him from it.

"Q. You would pull it out and push it away from the channel, is that right?

"A. On top of the channel, slip it out and leave it ride on top of the channel, pull it out enough to slip it out, turn it over on the side and slide back on the channel. That saves you from lifting. If you want to lift them you would pull them way out, bend over and lay them down, that runs into too much work. We don't use them that way.

"Q. And then you would, with one hand, slip this hook out?

"A. Yes.

"Q. And Mr. Calvert wasn't lifting this hook?

"A. Not particularly, no.

"Q. When he took his coffee break, about how long from the time you quit until he had his attack there on the job?

"A. I'd say maybe between ten and fifteen minutes.

"Q. You were never surprised to see him performing this type of work, though?

"A. Never was, because he done it before.

"Q. Nothing unusual as far as you were concerned?

"A. No, that's right."

It is conceded by the claimant the decedent occasionally did a measure of physical work even though it was not his duty. From the facts before us, we are required to conclude the judgment of the district court is supported by substantial competent evidence. The claimant did not sustain the burden of proof that the decedent did anything more than the usual amount of work in the course of his regular employment on the day he suffered his fatal heart attack. In other words, the evidence was that the decedent was performing his usual work which required no unusual exertion, and the judgment will not be overturned on appellate review. (*Muntzert v. A. B. C. Drug Co.,* 206 Kan. 331, 478 P. 2d 198; see, also, 1 Hatcher's Digest [Rev. Ed.], Appeal & Error, §§ 507, 508.)

The judgment of the district court is affirmed.