No. 46,328

Victor J. Dolan, *Appellant,* v. H. W. Steele, d/b/a Steele Oil Company, and United States Fidelity and Guaranty Company, *Appellees.*

(485 P. 2d 1318)

Opinion filed June 12, 1971.

*George E. McCullough,* of McCullough, Parker, Wareheim, LaBunker and Rose, of Topeka, argued the cause and was on the brief for the appellant.

*James P. Mize,* of Clark, Mize, Graves, Linville and Miller, Chartered, of Salina, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Harman, C.: This is an appeal from a district court's denial of a workmen's compensation claim for disability based on cerebrovascular injury.

Claimant-appellant, Victor J. Dolan, fifty-three years of age, had been for about twenty years in the employ of respondent-appellee, H. W. Steele, a Texaco oil distributor in Salina, Kansas. Claimant's principal job was to make deliveries by truck of gas, oil and grease. He also unloaded freight cars of oil products when they were shipped to respondent's bulk plant. Respondent's only other employee was a female bookkeeper.

Claimant testified that on the morning of July 6, 1967, he unloaded a freight car and set up fifteen or twenty fifty-five gallon drums of oil products, which was heavy work. After unloading the car claimant made several deliveries; while en route to another delivery that afternoon he sustained a stroke, went off in the ditch with his truck, and was hospitalized; his duties were primarily making small deliveries; he would help unload carloads of oil whenever

they came in; Mr. Steele frequently helped out but claimant often handled the barrels alone; about once a month claimant would help unload freight cars. A restaurant owner testified she recalled seeing claimant unloading a car the same day upon which he was later hospitalized.

A general medical practitioner testified on claimant's behalf: He had examined claimant but had not treated him; claimant could have had a cerebral vascular accident as a result of the exertion of unloading the freight car and that would be a logical assumption; claimant's work probably precipitated his condition; what he was really saying was there was a possibility claimant's unloading work precipitated the accident.

On respondent's behalf documentary evidence from the Union Pacific railroad was produced indicating the freight car in question was unloaded prior to July 6, 1967, the car having been "spotted" on that company's tracks for unloading; records from the Santa Fe railroad, which had had the car brought in and against whom claim for freight damage had been made, also indicated the car was unloaded prior to July 6, 1967. Respondent Steele testified the freight car was not on the siding on that date.

Mr. Steele also testified that in June, 1967, claimant had delivered about six or seven thousand gallons of oil; claimant frequently loaded and unloaded thirty or fifty-five gallon drums of oil, principally the latter size; claimant unloaded oil drums from freight cars two or three times per month; he delivered barrels of oil to respondent's customers.

The physician who treated claimant, Dr. Weber, was a specialist in internal medicine. He first examined claimant when he was hospitalized July 6, 1967. He testified claimant had a preexisting arteriosclerosis; claimant had sustained a cerebral thrombosis; the cerebral thrombosis was not related to claimant's work; claimant's exertion did not have any effect upon his disease.

The workmen's compensation examiner found that claimant's preexisting disease was precipitated into a disability by "work more than claimant performed on a day to day basis" and he awarded compensation.

Upon review the workmen's compensation director likewise awarded compensation, finding that claimant's exertion in unloading the freight car was more than his usual work in the course of

his regular employment and further that his cerebral vascular accident was causally related to the exertion of the work he was performing for respondent.

Upon respondent's appeal the district court denied compensation and entered the following order:

"The claimant sustained a stroke on July 6, 1967, while making a delivery of petroleum products for the respondent. He had for 20 years been employed as a delivery man for the respondent and was the only employee other than a woman bookkeeper.

"Respondent is the Texaco bulk station operator in Salina. Claimant's day to day work was delivering gasoline and petroleum products to customers. The respondent routinely received railroad freight car deliveries of barrels of oil and petroleum products at irregular intervals. The claimant unloaded the freight cars at such times as the needs of the business required, approximately once a month over the years.

"There is a dispute as to the exact work performed by claimant on July 6, the day of his stroke. He claims to have unloaded barrels of oil from a freight car in the early morning. A disinterested witness supports claimant's allegation that he unloaded barrels from the car the day of his stroke. Claimant claims this is exertion of work more than his usual work in the course of his regular employment since it is not his day-to-day work but done only about once a month.

"The 1967 amendment of KSA 44-501 provides:

" 'Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment.'

"The Court has no cases decided under this amendment, nor even under similar statutes, for it's guidance. It is a statute intended to *limit* recovery in cases of cerebrovascular injury. To support an award of compensation the cause must be exertion of work more than that of usual work in the regular employment.

"Claimant interprets the statute to include a day-to-day element in the usual work and regular employment.

"The Court finds that it was 'usual work' for this employee to unload barrels from a freight car and that it was work in the course of his regular employment though performed at irregular intervals as the routine of business required. The statute contains no day-to-day standard so far as this court can ascertain.

"In addition to these considerations as to the nature of the exertion expended by the claimant on July 6 the Court gives great weight and credit to the testimony of Dr. Weber, the claimant's own treating physician. His clear and unequivocal opinion is that the exertion of claimant's work was not a significant causative factor in the claimant's injury.

"The Court finds that the claimant has failed to sustain his burden of proof and that award of compensation should be and is denied."

Claimant's sole contention of error presented to this court in his statement of points is:

"This District Court erred in construing K. S. A. 1967 Supp. 44-501 pertaining to cerebrovascular injuries. The Court strictly construed the meaning of the term 'usual work' in said amendment against the injured workman in violation of the Kansas Workmen's Compensation Act's rule of liberal construction, which provides that all provisions of the Act shall be liberally construed in favor of the workman, in order to award compensation where reasonably possible to do so."

Claimant argues that legislative intent in enacting the 1967 amendment to K. S. A. 44-501, expressing the obligation under the workmen's compensation act, must have been to define the term "usual work" as used therein to mean "standard regular day-to-day work." In presenting his contention for reversal and remand claimant would have us disregard the trial court's statements respecting the medical aspect of the case. We are unable so to do. Actually the trial court made two separate findings, either of which, if proper, would preclude award of compensation. First, the court found under the evidence that it was "usual work" for claimant to unload barrels from a freight car. This finding was not in harmony with those made by the examiner and director, which latter findings embody standards of statutory interpretation claimant would have us adopt on appeal. However, as indicated, the trial court did not stop with the nature of the work aspect but it found, *additionally,* that giving credit to the testimony of the treating physician, the exertion of claimant's work was not a significant causative factor in claimant's injury. This amounted to a positive finding which we may not with propriety ignore, supported as it is by the clear and unequivocal opinion of Dr. Weber that claimant's work had no effect upon his disease and the cerebral thrombosis was not related to his work.

Our law has always been that whether a heart attack is causally related to the employee's work is a question of fact (see *Hanna v. Edward Gray Corporations,* 197 Kan. 793, 421 P. 2d 205). Nothing in the 1967 amendment has eliminated this element of causation in fact, essential for disability to become compensable. Under the amendment the causal relation of the exertion to the cerebrovascular injury remains a question of fact. With respect to this issue of causation the usualness of the exertion is irrelevant. This was the import of our recent holding in *Muntzert v. A. B. C. Drug Co.,* 206 Kan. 331, 478 P. 2d 198, in which compensation was sought by

the widow of a workman who died from a heart attack shortly after leaving his place of employment. Upon conflicting medical testimony the district court found there was no causal relation between the decedent's employment and the coronary occlusion which caused his death. On appeal the claimant's argument was directed toward a finding of the district court that the evidence did not establish any "unusual activity" on decedent's part within the contemplation of the 1967 amendment to 44-501. Appellant there contended that the term "unusual activity" has a dissimilar connotation than the phrase "more than the workman's usual work" as used in the statute, arguing that "unusual" implies a greater variation from the norm than "more than usual". Appellant there sought, as does claimant in the case at bar, to have this court declare a particular standard applicable to the work aspect of the case. In response this court stated:

"Whatever might be the semantic basis for the appellant's claim, we believe it would be fruitless for us at this time to engage in learned discussion as to what, if any, practical distinction exists between 'unusual' and 'more than usual.' We simply do not reach the point of construing the 1967 amendment. The trial court found, on what we deem sufficient evidence, that there was no causal relationship between the decedent's employment and the coronary occlusion suffered after he left work, and that the occurrence did not arise out of and in the course of the decendent's employment. Thus, whether the decendent's work on the day in question was more than his usual work becomes entirely irrelevant, and we need not now become involved in the thicket of semantics." (p. 333.)

We see no reason to depart from this approach.

The factual findings on causation is supported by substantial competent evidence and under the familiar rule may not be set aside upon appellate review.

The judgment is affirmed.

APPROVED BY THE COURT.