No. 47,002

Mrs. EDNUS NICHOLS, Widow of Harold L. Nichols, Deceased, *Appellant*, v. KANSAS STATE HIGHWAY COMMISSION, and CARRIERS INSURANCE COMPANY, *Appellees.*

(508 P. 2d 856)

Opinion filed April 7, 1973.

*George E. McCullough,* of the firm of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellant.

*Charles J. Woodin,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This appeal is from a judgment denying a widow's claim for benefits under the Workmen's Compensation Act for the death of her husband. The death of the decedent, Harold L. Nichols, is alleged to have resulted from a myocardial infarction.

The facts surrounding the death have been stipulated. For some fourteen years the decedent was employed by the respondent, Kansas State Highway Commission, performing highway maintenance work in general. He was classified as Highway Maintenance I. From spring to early fall he performed mowing work. After the mowing season was over until spring Mr. Nichols was involved in a variety of general maintenance work such as truck driving, flagging, erecting snow fences, snow removal operations, repairing guard rails, etc. Each year for about thirty days during March and April the decedent, along with other highway maintenance employees, filled cracks in the highway. This work consisted of walking over the highway and filling the cracks with liquid tar from buckets weighing approximately twenty pounds.

Approximately twenty days prior to April 15, 1969, decedent saw a doctor for what the doctor said was a cold. On Friday, April 11, 1969, he and other members of the highway crew began their annual filling of highway cracks. The decedent was tired when he got home that evening and co-employees testified that his hands had begun to swell that day. The next two days the decedent did not work, but on Monday, April 14, he worked the entire day, but was still tired. On the following day Mr. Nichols grew more fatigued and he looked terrible. A co-employee let him drive his truck while the co-employee took his place and filled cracks. The decedent finally became so ill he went home, and he died in a hospital later that evening.

An award of compensation was entered by the examiner in favor of Mrs. Nichols. On review, the director set the award aside even though he found there was sufficient evidence to establish a causal relationship between the work the decedent was performing and his resulting death. The basis for the director's denial of compensation was that the exertion of the work being performed by the decedent was not more than his usual work in the course of his regular employment and, hence, that the case would be governed by the 1967 heart amendment to K. S. A. 44-501 (now K. S. A. 1972 Supp. 44-501). On appeal to the district court, the decision of the director was upheld and his findings were adopted. This appeal followed.

A bit of background needs to be supplied. K. S. A. 1972 Supp. 44-501 defines the obligation of an employer under the Workmen's Compensation Act (often referred to herein as the Act). For present purposes the statute provides:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation to the workman in accordance with the provisions of this act. . . ."

This identical language was originally contained in Chapter 218, Laws of Kansas 1911, and has appeared verbatim in subsequent re-enactments.

In a succession of decisions stretching over the years this court had held that either disability or death attributable to heart or circulatory ailments was compensable as resulting from accidental injury under the Act where the stress or strain arising out of and in the course of a workman's usual employment was the sole or a contributing cause of the injury, even though a preexisting heart or vascular condition may have been a predisposing factor. (*Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793; *Mein v. Meade County,* 197 Kan. 810, 421 P. 2d 177; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Hanna v. Edward Gray Corporation,* 197 Kan. 793, 421 P. 2d 205.) Our decisions in such respect seemed to be in harmony with the majority rule in this country. In 1A Larson's Workmen's Compensation Law, § 38.30, pp. 541, 551, the author states:

"The preponderance of jurisdictions that now accept the usual-exertion rule in heart cases is almost two to one over those that reject it. . . ."

It was in 1967 that the Kansas Legislature amended K. S. A. 44-501 by enacting the heart amendment which is involved in this appeal. It reads as follows:

". . . Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment."

There are two prongs to the claimant's attack on the trial court's judgment denying compensation. She first contends the heart, or 1967, amendment is not a restrictive amendment limiting application of the Act with respect to heart cases in general, but rather that the enactment *extends* coverage of the Act to cases of coronary disease, a malady which formerly had not come within the scope of the Act. She argues that adoption of the amendment did not disturb or over-rule our case law as to cardiovascular *injury,* but that it brought heart disease cases under the sheltering umbrella of the Act, and she insists the amendment's limitations apply only to cases of heart *disease.*

In support of this theory claimant notes the use of the disjunctive "or" in the first portion of the amending statute: "Compensation shall not be paid in case of coronary or coronary artery disease *or* cerebrovascular injury. . . ." (Emphasis supplied.) Her argument proceeds somewhat along this vein, as we understand it: Coronary artery *disease* is a condition separate and distinct from cerebrovascular *injury* and the legislature intended to distinguish between the two in workmen's compensation cases; that the legislature intended, through its amendment of K. S. A. 44-501 to add coronary artery *disease* to those compensable occupational diseases which are listed in K. S. A. 44-5a02 while subjecting such disease to the limitations of the amendment; at the same time the legislature did not intend to change the decisional law relating to cerebrovascular or cardiovascular injury, or to subject such injuries to the limiting factors of the amendment.

We are unable to give a convoluted meaning to the amendment. K. S. A. 1972 Supp. 44-501 deals with injury by *accident,* not by *disease.* The term "accident" as used in the Workmen's Compensation Act has been defined as an occurrence which is undesigned, sudden and unexpected, and normally of an afflictive or unfortunate character, which is often but not necessarily accompanied by a manifestation of force. *(Pinkston v. Rice Motor Co.,* supra.) It is logical to assume that had the legislature intended to bring heart disease, as such, within the ambit of the Workmen's Compensation Act, the amendment would not have been added to K. S. A. 44-501, but rather would have been placed in the occupational disease section of the law. (K. S. A. 44-5a01, *et seq.*)

This court has been accustomed to treat as a single group those cases in which injury to a workman has been occasioned by heart and vascular accidents. Such terms as cerebral vascular accident, coronary insufficiency, cerebral hemorrhage, coronary occlusion, myocardial infarction, coronary arteriosclerosis, coronary thrombosis, and acute heart failure have been used by this court over the years as being encompassed within a single category, loosely designated as "heart cases." In other words, this court has been prone to hold in pre-amendment days that where the death or disability of a workman results from a sudden, undesigned and unexpected breakdown of the circulatory or cardiovascular system which was causally related to the stress of his usual labor, compensation was due under the Workmen's Compensation Act even though preexisting heart disease may have been a predisposing

factor. (See, in addition to cases previously cited, *Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796; *Geurian v. Kansas City Power & Light Co.,* 192 Kan. 589, 389 P. 2d 782, *Pratt v. Seis-Tech Exploration Co.,* 199 Kan. 732, 433 P. 2d 555; *Osman v. City of Wichita,* 203 Kan. 313, 454 P. 2d 427; *Dolan v. Steele,* 207 Kan. 640, 485 P. 2d 1318.)

In our opinion the 1967 amendment was enacted to effect a change in the existing case law pertaining to "heart cases", as the term is used in a broad sense, by limiting coverage in such cases, not by broadening the scope of the Act to cover diseases of the heart. This viewpoint has been indicated in some of our recent cases. In *Lyon v. Wilson,* 201 Kan. 768, 443 P. 2d 314, the court said:

". . . Under the amendment, compensation is not payable in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of his regular employment. . . . [W]e regard the amendment as being sustantive [sic] rather than procedural and remedial in nature. . . ." (p. 773.)

In the somewhat later case of *Osman v. City of Wichita,* supra, we stated that the "legislative change with reference to heart cases" did not apply to compensation claims arising before July 1, 1967.

Our view regarding legislative intent finds support from highly respectable sources. Writing on the subject, The Unusual-Exertion Requirement and Employment-Connected Heart Attacks, appearing in the Kansas Law Review, Vol. 16, Professor William A. Kelly, said:

"It is clear, however, that the legislature had added some sort of unusual-exertion requirement in heart and cerebral hemorrhage cases. In doing so, the legislature rejected the reasoning of a long line of supreme court decisions. . . ." (p. 412.)

"The unusual-exertion requirement which now appears in Kan. Stat. Ann. § 44-501 is an obvious manifestation of legislative discontent with previous decisional law. Perhaps it was felt that awards were sometimes allowed where the disability or death should have been regarded as the end result of the natural progress of disease, rather than as arising out of employment. The language requiring unusual exertion appears in the section of the Act which provides that the employer shall be liable for compensation in cases of personal injury by accident arising out of and in the course of employment and adds an additional requirement in heart cases." (p. 416.)

In a manual on the Workmen's Compensation Law compiled January 1, 1968, in the office of the Director of Workmen's Com-

pensation, the following statement is made with reference to the heart amendment:

". . . The legislative intent of this amendment requires the claimant to bear the burden of proof that injuries in this category arose out of something more than the exertion required of the workman's usual work in the course of his regular employment." (p. 17.)

We conclude that the construction of the heart amendment urged by the claimant in this case runs counter to the legislative intent as we conceive it to be. Her argument in such respect must be rejected.

There remains for our consideration the second point presented in this appeal.

In denying compensation the Director of Workmen's Compensation, in reviewing the examiner's award, found in effect that the exertion of work which precipitated the decedent's death was not greater than the work he usually performed in the course of his regular employment. The district court on appeal adopted this finding, among others, and further found:

". . . The Court finds specifically that the workman's regular employment consisted of this crack filling operation even though it was done on a more or less seasonal basis, having been participated in for approximately thirty days out of each of the last fourteen years, and that that in and of itself does not take it outside the workmen's regular employment."

The claimant submits the trial court erred as to this finding, which she stigmatizes as being illiberal. She argues that usual work means work done on a day-to-day basis; and that work becomes more than usual if done on a seasonal basis or at irregular periods of time. The respondent counters with the suggestion that under claimant's theory of interpretation it would be possible for some employees to have no usual or regular work.

We have had but two cases bearing on this particular issue. In *Dolan v. Steele*, supra, the workman's day-to-day work was delivering gasoline and petroleum products to customers of his employer's bulk Texaco station. He also unloaded oil and petroleum products from freight cars at approximately monthly intervals. On the morning in question the claimant had unloaded some fifteen or twenty fifty-five gallon drums of oil, which was heavy work. He suffered a stroke while en route to making a delivery. The trial court found it was "usual work" for the employee in the course of his "regular employment" to unload barrels from a freight car even though performed at irregular intervals, and that

the statute contained no day-to-day standard. In sustaining the trial court's judgment denying compensation we did not reach the question of whether "usual work" meant "standard regular day-to-day work" as the claimant contended, since the case was decided on another ground.

In the second case, *Calvert v. Darby Corporation*, 207 Kan. 198, 483 P. 2d 491, the deceased workman was employed by the respondent in a supervisory capacity. His duties did not include engaging in physical labor. On the date of his death he was detailed to supervise the unloading of steel channels from gondola cars, his function being to signal the cars coming in and having them placed for unloading. On the fatal day the decedent had assisted in the unloading of six beams by guiding each one to its position on a pile. The work required no lifting and consumed slightly more than half an hour. He collapsed and died during a coffee break. Fellow workmen testified it was not unusual for him to do the type of work he was doing on the date of his death. The district court found that the claimant widow had not sustained the burden of proving decedent did any more than the usual amount of work or had exceeded his usual exertion.

On appeal, the findings of the trial court were upheld as being supported by substantial, competent evidence.

As we have said before it has been stipulated that Mr. Nichols did general highway maintenance work, including mowing, truck driving, flagging traffic, erecting snow fences, removing snow and ice, repairing guard rails and filling highway cracks. Mrs. Nichols testified he generally did mowing from May until frost and the balance of the year did whatever he was directed to do; that whenever cracks had to be filled he participated in it, and this generally occurred during a two-month period.

We find nothing in the heart amendment to suggest a day-to-day test in measuring usual exertion, usual work or regular employment, nor have we been cited to any authority along this line. It occurs to us that what is "usual" or "regular" within the meaning of the amendment will generally depend upon a number of facts and circumstances, among which the daily activities of a workman may be one, but only one, among many factors.

Whether the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of his regular employment presents a question of fact which must

be determined by the trial court. As was so aptly said in *Calvert v. Darby Corporation,* supra, "the issue before this court is simply whether the findings of the district court . . . and its judgment are supported by substantial competent evidence." (p. 200.)

Considering the evidence which was before the trial court relating to the nature of decedent's employment in highway maintenance work, his employment classification, the variety of the tasks he performed and the seasonal character of much of the work to be done, we can only conclude that the findings are sufficiently supported and that the judgment must be affirmed.

It is so ordered.