No. 47,135

JAMES H. DIAL, *Appellee, v.* C. V. DOME COMPANY, and BITUMINOUS CASUALTY CORPORATION, *Appellants.*

(515 P. 2d 1046)

Opinion filed November 3, 1973.

*Richard C. Dearth,* of Jones and Dearth, Chartered, of Parsons, argued the cause and was on the brief for the appellants.

*Simeon Webb,* of Pittsburg, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is a workmen's compensation case in which we are called upon to determine what effect the 1967 "heart amendment" to the Kansas workmen's compensation act has on a case of "heat stroke."

The claimant in this case is a finish carpenter who was 58 years of age at the time he sustained his injury on June 25, 1971. He had no

history of heart trouble, but it was later determined that he did have atherosclerosis.

In April he had begun working on the construction of a large, one-story building in Parsons, Kansas, intended for use as a retail discount center. For several days prior to June 25 he had been installing paneling and trim on a long, narrow mezzanine deck being fitted out for offices. The deck was some nine to fifteen feet above the floor of the building, and about nine feet from the un-insulated metal roof overhead. For the previous five days the outside temperatures had been ranging from nighttime lows of around seventy degrees to daytime highs in the upper eighties and low nineties. The day before it had hit 94. The building shell was closed in, and as the interior paneling progressed what air circulation there was on the mezzanine diminished. To claimant the air seemed hotter each day.

On the twenty-fifth at about 10:00 a.m. claimant began to develop a headache, couldn't see too well, and was perspiring heavily. He decided to take a coffee break. He went to the end of the mezzanine, about 45 feet away, where a co-worker had piped in some air conditioning through a flexible tube to the roof. He had just poured himself a cup of coffee when he collapsed and became for a time unconscious. His co-worker said he "Felt like fire." He was treated at the Labette County Hospital and then at the Veterans Administration Hospital in Kansas City, Missouri, where he remained for 50 days.

The Veterans Administration Hospital made the following diagnosis:

"1. Extracranial Carotid Artery Disease, Bilateral
   (a) Total Occlusion Right Carotid
   (b) Subtotal Occlusion Left Carotid
"2. Hyperlipedemia, Probable Type IV
"3. Occlusion of left femoral artery secondary to contrast study, treated, cured."

The medical testimony was given by Dr. W. G. Rinehart, a Pittsburg, Kansas, physician. As a result of his examination and a review of claimant's history the doctor testified:

"Q. Did you form an opinion doctor from the examination[?]
"A. That on June 25, 1971 while working in a very hot area that there was incurred a cerebral vascular accident on the right side resulting in unconsciousness, blurred vision, slurring of speech, pain in the right side of the head,

numbness and weakness of the left arm and leg. He suffered a cerebral vascular accident, *the probable result of heat.*

"Q. As I understand doctor, each of us has a heat dissipating mechanism in our body, do we not?

"A. We have what we call a heat control center in the brain. That has a lot to do with helping control the temperature of the body. If there is excessive heat and there is a tendency because of excessive heat to quit perspiring and the perspiring has a lot to do with cooling the body and keep it, why the body has a tendency to get hot. In my opinion *the heated area precipitated this vascular accident.* In my opinion this is a cerebral hemorrhage. He did have a physical condition which was aggravated to the point where he has the accident.

"Q. Would this rise in this heat and his inability to accommodate to that cause any pressure intercranially[?]

"A. It probably caused general increase in blood pressure, including intercranial pressure, yes.

"Q. Was that what brought about this cerebral accident, or just what would cause that, mechanically, I mean?

"A. Well my opinion there was a rupture of the blood vessel on the surface of the brain on the right side, and that with excessive heat a body has a marked tendency to suffer hemorrhage and in my opinion this man suffered a cerebral vascular accident we call it.

"Q. Do you feel doctor there was any predisposition to *this type of thing* he suffered[?]

"A. Yes. He had a condition we call atherosclerosis.

"Q. Was this aggravated by heat, you think[?]

"A. The condition of atherosclerosis was such that *the heat precipitated a rupture of the blood vessel* on the surface of the brain, producing this cerebral hemorrhage or cerebral vascular accident. The atherosclerosis condition would keep him from accommodating to the heat." (*Emphasis added.*)

The doctor also found claimant to be totally disabled from performing manual labor and the duties of a carpenter.

The examiner, the director, and the trial court each in turn found that claimant was temporarily totally disabled, and that his disability was the result of an accident which arose out of and in the course of his employment. Compensation was awarded accordingly, and the employer and its insurance carrier have appealed to this court.

The fact or extent of disability are not in issue. The question here is solely whether the heart amendment precludes compensation because, admittedly, claimant was working no harder when he was stricken than he was accustomed to working or than he was working the day or week before. The amendment, to K. S. A. 44-501, provides:

"Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment."

The appellant's basic argument is that, since claimant suffered a "cerebrovascular injury," under the amendment he cannot be compensated because his exertion was no more than his "usual work" in the course of his "regular employment."

Below, this contention was met in a different way at each level. The examiner made no mention of the amendment, finding merely that claimant had met with "personal injury by accident which arose out of and in the course of his employment."

The director, on review, characterized claimant's injury as a "heat stroke," and observed, "The Supreme Court has long recognized heat stroke as a compensable injury." He relied on the dictum in *Hoag v. Laundry Co.,* 113 Kan. 513, 515, 215 Pac. 295 (1923) that "It is now generally recognized that what is known as heat stroke is an accident, within the meaning of compensation laws. . . ." He concluded: "The Director believes that it was not the legislative intent of K. S. A. 44-501 to deny compensation where a situation as this occurs." In short, he found the amendment inapplicable.

The trial court applied the amendment, but found that the "increased metabolic heat" accompanying the heat stroke constituted the increased "exertion" required by the amendment. Appellants complain that there was no evidence of any increased metabolic heat—or of increased exertion of any kind. In view of our conclusion we need not consider the merits of these complaints.

Earlier this year, in *Nichols v. State Highway Commission,* 211 Kan. 919, 508 P. 2d 856, we had occasion to consider in some depth the general legislative purpose in its 1967 enactment of the heart amendment. We noted first (p. 921):

"In a succession of decisions stretching over the years this court had held that either disability or death attributable to heart or circulatory ailments was compensable as resulting from accidental injury under the Act where the *stress or strain* arising out of and in the course of a workman's usual employment *was the sole or a contributing cause* of the injury, even though a preexisting heart or vascular condition may have been a predisposing factor." (Citing cases. Emphasis added.)

The former rule was further characterized by saying (pp. 922-3):

". . . In other words, this court has been prone to hold in pre-amendment days that where the death or disability of a workman results from a

sudden, undesigned and unexpected breakdown of the circulatory or cardio-vascular system which was *causally related to the stress of his usual labor*, compensation was due under the Workmen's Compensation Act even though pre-existing heart disease may have been a predisposing factor." (Citing cases. Emphasis added.)

It was conceived by the court that the thrust of the amendment was to reverse the line of cases characterized by these statements. Under the amendment, in the run-of-the-mill "heart case" it must be shown that at the time of his injury the workman was engaged in "unusual" exertion—or, in the language of the statute, "more than the workman's usual work" before compensation may be allowed. Whether the exertion in a particular case is "unusual," we held, is a question of fact for the trial court. (Syl. ¶ 4.) We therefore turned in that case to an examination of the evidence relating to usual vs. unusual exertion, and decided the case by applying the customary "substantial evidence" criterion for appellate review of trial court findings of fact. The same type of review has been afforded in each of our other three cases decided under the amendment: *Simpson v. Logan-Moore Lumber Co.*, 212 Kan. 404, 510 P. 2d 1234; *Dolan v. Steele*, 207 Kan. 640, 485 P. 2d 1318; *Calvert v. Darby Corporation*, 207 Kan. 198, 483 P. 2d 491.

The key feature common to all four of these cases, and to the line of cases the amendment supplants, is that *the exertion of the work—whether usual or unusual—was the producing cause of the injury.* This is what we mean by a "run-of-the-mill" heart case. And this, as we see it, is what the amendment speaks to when it says that the exertion to be measured is the "exertion of the work necessary to precipitate the disability." Neither the cases cited nor the amendment deal with a situation where the precipitating cause is *an external force, wholly independent of the workman's exertion.*

The latter is, of course, the situation we have here. The medical testimony is clear that it was *heat* that produced the disability; no mention is made in the testimony of *exertion* as a causative factor. Appellants recognize this in their brief, but argue that the injury-producing heat was no greater than the heat of the previous several days. This argument is foreclosed by *Taber v. Tole Landscape Co.*, 181 Kan. 616, 313 P. 2d 290, Syl. ¶ 1:

"With respect to an injury sustained by a workman resulting from exposure to natural elements, such as excessive heat, the general rule is that if the nature of his employment, that is, the work he is doing, subjects him to a greater hazard or risk from the elements than that to which he otherwise would be

exposed, so that there may be said to be a causal connection between the conditions under which the work is performed and the resulting injury, the injury is deemed to be an accidental injury arising out of the employment within the meaning of the workmen's compensation act."

There is no question but that in this case claimant's employment subjected him to a greater hazard from heat than "that to which he otherwise would be exposed." Further, the evidence indicates that the progressive enclosure of the mezzanine caused progressively greater heat. The findings below that claimant suffered an "acident," in the accepted workmen's-compensation-law sense of the word, and that such accident arose out of and in the course of his employment, are all amply supported by the evidence.

It having been demonstrated that heat was an external, accidental cause of claimant's disability, does the fact that the heat worked its mischief through the medium of a cerebral hemorrhage rather than some other misfortune render the resulting disability noncompensable? We think not.

Clearly, if the claimant had passed out from the heat, fallen off the mezzanine deck and broken an arm, the injury would have been compensable. Heat, then, can be the causative factor of a compensable disability. Alternatively, had a falling beam struck the claimant on the head, causing the same cerebral hemorrhage he actually suffered, we would suppose that the resulting disability would likewise be clearly compensable. The intervention of a "cerebrovascular injury" would not bring the heart amendment into play, because the agency which "precipitated" the disability was not the exertion of his work but the external force of the blow. (Cf., *McMillin v. City of Salina,* 163 Kan. 575, 184 P. 2d 201, where the workman slipped, struck his shoulder, and suffered an aneurism which was eventually fatal.)

Yet another analogy might be that a workman who is engaged in his customary duties, and putting forth only his customary exertion, when he is suddenly confronted by an armed assailant bent on robbery. If the workman succumbs to a physical attack his injuries are compensable. *Craig v. Electrolux Corporation,* 212 Kan. 75, 510 P. 2d 138 (shooting); *Phillips v. Kansas City, L. & W. Rly. Co.,* 126 Kan. 133, 267 Pac. 4 (beating); *Stark v. Wilson, Receiver.,* 114 Kan. 459, 219 Pac. 507 (stabbing). But if the same workman has a weak heart which succumbs to the natural fear and anxiety engendered by the encounter, without physical trauma, are he or

his dependents to be deprived of compensation merely because his *exertion* was not unusual? Again we think not; in such a case his exertion has nothing to do with his injury.

We thus agree with the director's conclusion; it was not the legislative intent that the amendment apply to this sort of case. Where the disability is the product of some external force or agency, and not of the exertion of the claimant's work, the heart amendment has no applicability. In such a case, where exertion is not the agency "necessary to precipitate the disability," the usual vs. unusual exertion test applied in our previous heart amendment cases is irrelevant. Instead, the customary standards are to be applied in determining whether the injury was accidental, and whether it arose out of and in the course of the workman's employment.

In this case, as previously noted, those issues have been determined in favor of the claimant on sufficient evidence. The judgment is therefore affirmed.

APPROVED BY THE COURT.