No. 48,464

VERA M. LENTZ, individually and as mother and natural guardian of VIRGINIA L. LENTZ and MARY C. LENTZ, minors, (Leonard J. Lentz, Deceased), *Appellees*, v. THE CITY OF MARION, KANSAS and TRAVELERS INSURANCE COMPANY, *Appellants*.

(563 P.2d 456)

Opinion filed April 9, 1977.

*Frederick L. Haag*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and was on the brief for the appellants.

*Byron Brainerd*, of Curfman, Brainerd, Harris, Bell, Weigand & Depew, of Wichita, argued the cause, and *Edwin G. Westerhaus*, of Marion, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation

case wherein Leonard J. Lentz died after suffering a heart attack while mowing grass at the power plant for the City of Marion, Kansas. The claimants, his widow and minor children, were denied compensation by the Workmen's Compensation Examiner and Director, but were awarded compensation by the district court on favorable findings pursuant to the "heart amendment" of the Kansas Workmen's Compensation Act. (K.S.A. 1976 Supp. 44-501.)

The underlying question on appeal is whether the findings of the trial court are supported by substantial competent evidence.

On April 24, 1947, Leonard J. Lentz married the claimant, Vera M. Lentz. Six children were born to this marriage, two of whom remained in the home in September of 1974.

In 1971 Mr. Lentz began working as a light plant operator for the City of Marion, Kansas. Mr. Lentz normally worked from midnight to 8:00 a.m. Most of the duties of a light plant operator involved checking water pumps, taking hourly readings from engine temperature gauges, checking engines every fifteen to thirty minutes, mopping floors and keeping an engine cleaned and painted. To perform this work an operator must climb up and down stairs and must also put oil into the engines from 55 gallon barrels. Plant operators must also oversee the equipment during storms and emergencies. Occasionally it was necessary for off-duty plant operators to do repair and overhaul work on the engine and other equipment, and to mow the grass around the power plant. Overtime was paid the off-duty operators for both of these jobs.

On the afternoon of September 17, 1974, Mr. Lentz voluntarily returned to work to help Mr. Matz, another power plant operator, mow the grass. Both men clocked in and began mowing; Mr. Lentz with a push-type power mower cutting the grass around plumbing pipes and other obstructions, and Mr. Matz with a riding mower in the bigger areas. The day was warm, about 80 degrees Fahrenheit. The grass was bermuda and had grown fairly tall because it hadn't been mowed for about three weeks, so it required considerable effort and exertion to push the power mower. The wind was from the south, and Mr. Lentz was mowing on the north side of the power plant where there was no breeze. Mr. Lentz worked for more than an hour, then stopped to smoke a cigarette and drink some water. He then resumed mowing until

he ran out of gas. He refilled the gas tank but a short time later told Mr. Matz he was not feeling well. Mr. Lentz then went into the plant and collapsed. Efforts to revive him were unsuccessful. Death was attributed to a myocardial infarction.

A claim was timely filed by the decedent's widow. Stipulations were agreed upon as to the place of the accident, the average weekly wage and prior payments. The examiner found the claimants established the grounds necessary for recovery except the claimants failed to maintain the burden of proof in establishing that the decedent's coronary was the result of exertion beyond the usual work in the course of his regular employment. No review by the Workmen's Compensation Director was requested, and on October 17, 1975, the examiner's award was approved.

On appeal to the district court of Marion County the Director was reversed and the district court awarded compensation. In pertinent part, the district court found:

"8. Decedent had not ever before done the identical work that he was doing on the date of his death.

"9. The Court finds as a mixed issue of fact and conclusion of law that claimants have sustained their burden of proof by establishing the decedent's death was the result of a coronary, that the coronary was a result in exertion beyond the usual work in the course of his regular employment, that the operators of the power plant did on some occasions mow the grass, and that the foreman of the power plant did on some occasions mow the grass, but that this particular employee had not on any past occasions mowed the grass. Therefore, an award in favor of the claimants and against the respondent and insurance carrier should be and it is allowed in this case."

The employer and insurance carrier have duly perfected an appeal from that judgment.

In 1967 the legislature amended K.S.A. 44-501 by adding the "heart amendment" which reads:

". . . Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment."

A number of cases have arisen under this amendment. Two recent "heart amendment" cases which review the applicable principles are *Suhm v. Volks Homes, Inc.,* 219 Kan. 800, 549 P. 2d 944, and *Woods v. Peerless Plastics, Inc.,* 220 Kan. 786, 556 P. 2d 455.

The appellants first contend "the trial court erred in its finding

that the employee had never performed one of his regular employment duties prior to his death." This contention focuses upon finding No. 8 and the portion of finding No. 9, which reads:

".  .  . [T]his particular employee had not on any past occasions mowed the grass.  .  .  ."

All the testimony in the record indicates Mr. Lentz had mowed the power plant lawn on prior occasions. Mr. Lentz had not mowed the grass in 1974, but he had mowed it previously. However, the record does not disclose that Mr. Lentz had used the *push-type power mower* in tall bermuda grass in the past. This is apparently what the district court meant by its eighth and ninth findings of fact.

The appellants' quibble over the district court's findings on the record here presented is immaterial. Whether the deceased workman had done "identical work" does not supply an answer to the crucial inquiry: whether the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment under K.S.A. 1976 Supp. 44-501.

On this point the appellants contend the trial court erred in finding that the decedent's death was the result of exertion beyond the usual work in the course of his regular employment. The issue is whether the exertion required to mow the grass was more than the workman's usual work in the course of the workman's regular employment.

Whether the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of his regular employment presents a question of fact to be determined by the trial court. (*Nichols v. State Highway Commission*, 211 Kan. 919, 508 P. 2d 856; *Suhm v. Volks Homes, Inc.*, supra at 805; and *Woods v. Peerless Plastics, Inc.*, supra at 788.) Findings of the trial court in this regard will be upheld on appeal where supported by substantial competent evidence. (*Calvert v. Darby Corporation*, 207 Kan. 198, 483 P. 2d 491; *Nichols v. State Highway Commission*, supra at 926; and *Woods v. Peerless Plastics, Inc.*, supra at 788.)

The appellants rely on the testimony of Orl Stage, the plant foreman, and Leslie Ford, another power plant operator, to support their position. However, Mr. Bredemeier, the superintendent of utilities for the City of Marion, Kansas, testified:

"Q. All right. Now, would you give the Examiner the benefit of your best judgment as to whether it would take more energy or less to mow the grass as compared to the duties of the operator?

"A. It would take more energy to mow the grass.

"Q. All right. Do you have an opinion as to whether it would be slightly more energy or a good deal more energy, or what, to mow the grass as compared to carrying out the duties of the operator, generally?

"A. Why, I would say it would be quite a bit more energy than that."

Although Mr. Bredemeier admitted a light plant operator would best know the amount of exertion required to do that work, Mr. Bredemeier testified he was familiar with the work by his inspections or supervision of the power plant. Therefore, Mr. Bredemeier's opinion is relevant and material. (See *Deines v. Greer*, 216 Kan. 548, 550, 532 P. 2d 1257; *Vocke v. Eagle Picher Co.*, 168 Kan. 708, 215 P. 2d 185; and 81 Am. Jur. 2d, Witnesses, Sec. 139, pp. 179-180.)

Here the record reveals the decedent mowed (1) for the first time in September of 1974, (2) tall bermuda grass, (3) with a push-type power mower, (4) on an afternoon of a hot day where there was no breeze, (5) after working his regular eight hour shift at night. What is usual exertion, usual work and regular employment as those terms are used within the meaning in the "heart amendment" will generally depend upon a number of facts and circumstances among which the daily activities of the workman may be one, but only one, among many factors. (*Nichols v. State Highway Commission*, supra at 925; and *Suhm v. Volks Homes, Inc.*, supra at 805.) The record here discloses substantial competent evidence to support the district court's finding that the decedent performed more than his usual work in the course of his regular employment.

Testimony of Dr. Thomas C. Ensey, Mr. Lentz' family doctor who examined Mr. Lentz shortly after the fatal heart attack, is sufficient to establish that the physical exertion of mowing the grass on September 17, 1974, was greater than the exertion of his usual work and precipitated the myocardial infarction. We distinguish *Muntzert v. A.B.C. Drug Co.*, 206 Kan. 331, 478 P. 2d 198 and *Dolan v. Steele*, 207 Kan. 640, 485 P. 2d 1318, because there causation was not established änd the usualness of the exertion became irrelevant.

Here the decedent, a regular employee of the respondent, volunteered to work overtime for the purpose of mowing the grass on his employer's premises.

Although the heart amendment refers to "regular employment," other workmen's compensation cases in this jurisdiction refer to accidents arising "out of his employment." The phrase "out of employment" points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. (*Carney v. Hellar*, 155 Kan. 674, 677, 127 P. 2d 496; and *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 302, 303 P. 2d 197.) The phrase "in the course of employment" simply means that the injury happened while the workman was at work in his employer's service. The phrase relates to the time, place and circumstances under which the accident occurred. (*Carney v. Hellar*, supra at 677.) Stated another way, personal injury by accident befalls a workman if it occurs while he is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time. (*Pinkston v. Rice Motor Co.*, supra at 301.)

Here the parties do not challenge the trial court's finding that the decedent met with personal injury resulting in his death by an accident on the date of his death, which arose out of and in the course of his employment.

An off-duty regular employee who volunteered to do work for his employer to fulfill a rush order was held to be covered by the Workmen's Compensation Act when he suffered a fatal heart attack while unloading the order at the customer's address in *Bituminous Casualty Corporation v. Ligon*, 290 F. 2d 694 (5th Cir. 1961). The court there rejected a contention that the workman was either a casual employee or a "volunteer." The court said an employment contract was implied from the special delivery request or implied from a continuation of his previous active employment. The workman was said to be no casual stranger seeking work or offering to do a favor. (See 1A Larson, Workmen's Compensation Law, Sec. 47.41 [1973] pertaining to "volunteers.")

The record contains passing references to the heat encountered by the decedent on the day of his death. However, the parties made no attempt to show that heat, as an external force, was a precipitating cause of death. (*Woods v. Peerless Plastics, Inc.*, supra at 790; compare *Dial v. C. V. Dome Co.*, 213 Kan. 262, 515 P. 2d 1046.

The judgment of the lower court is affirmed.