No. 48,569

LAWRENCE MAKALOUS, *Appellee,* v. KANSAS STATE HIGHWAY COM-
MISSION and TRUCK INSURANCE EXCHANGE, *Appellants.*

(565 P.2d 254)

Opinion filed June 11, 1977.

*Otto J. Koerner,* of Koerner & Elam, of Wichita, argued the cause and was on the brief for the appellants.

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal under the Workmen's Compensation Act from an award for disability from a myocardial infarction found to be a direct and natural result of an intimal hemorrhage suffered at work on February 21, 1974. The claimant, Lawrence Makalous, received an award based upon 50% permanent partial disability, together with medical benefits. No serious question is presented on appeal as to the percentage of the workman's present disability. The appellants' attack on the award is based upon facts surrounding the injury and the refusal of the district court to apply the so-called heart amendment. There was evidence that the extremely cold weather in which claimant was working was a precipitating cause of the intimal hemorrhage suffered by the workman.

The facts contained in the next six paragraphs, concerning claimant's work and resulting disability, are taken from the trial court's findings.

Claimant was a 58 year old male worker employed by the Kansas State Highway Commission at Belleville, Kansas. Prior to February 21, 1974, claimant had suffered no heart disease or coronary artery disease and considered himself to be in good health.

On February 21, 1974, the claimant was employed with another workman pulling posts out of asphalt pavement in the usual course of his employment. About quitting time claimant undertook to help two other workmen who were having trouble pulling a post. The ground was unusually hard because of the extreme cold. Claimant wrapped a chain around the bottom of the post, and while he was bending over to hold the chain down another worker suddenly jerked the post out of the ground. Claimant immediately suffered a pain under his left rib cage.

The weather on February 21, 1974, was cloudy, cold and

windy. The temperature was 18 degrees and the chill factor was below zero. Claimant worked the following day, which was a Friday, and did not report the pain to his foreman. A co-worker, Alvie Jeardoe, reported to the foreman that the claimant had suffered an injury to his chest in pulling the post. Claimant worked at his usual employment on Monday and Tuesday, although he was unable to keep up with the other workers. The pain in his chest, which occurred on February 21, eased up at times and became more severe at times but it never went away entirely.

On Wednesday, February 27, the pain became unbearable and claimant asked his foreman for sick leave to get a physical checkup. Claimant went to the Belleville Clinic and was seen by Duane L. Scott, M.D.,who admitted claimant to the Belleville Hospital. Dr. Scott ordered an electrocardiogram to be taken and told claimant that he had had a heart attack. Claimant remained in the hospital for three weeks. Subsequent electrocardiograms and enzyme tests failed to reveal infarction and claimant's cardiograms reverted to a near normal picture.

He was readmitted to the Belleville Hospital about 5:00 a.m. on May 13, 1974, with an acute extensive anterior wall myocardial infarction and was hospitalized through June 3, 1974. Claimant has not worked since February 27, 1974. He was released only to do light work. He was not to return to his usual highway work.

The court specifically found:

"An external force, extreme cold, precipitated the claimant's heart attack which resulted in his disability."

The court concluded the claim was not precluded under the "heart amendment" (K.S.A. 44-501) and approved and adopted the award previously entered by the examiner and director.

Now let us turn to some of the evidence bearing upon the question of whether the extreme cold, an external force, precipitated the intimal hemorrhage which led directly and naturally to the myocardial infarction.

Alvie Jeardoe, a co-worker, testified he was working with claimant on February 21, 1974. Weather conditions were extremely cold, windy and blustery. Asked if claimant's foreman knew about claimant's injury, Jeardoe stated that the foreman knew about it that evening because he told him about it. "I told him that he got hurt that day and how he got hurt." Jeardoe

worked with the claimant on the Monday following February 21st. He observed that claimant was not able to keep up with the rest of the men.

Osmond Smith, a co-worker, testified that he worked for the Highway Commission some thirty years and that he never worked on a more miserable day than February 21, 1974.

The claimant introduced the testimony of a Frieda Ahrens of Belleville, Kansas, to establish the weather conditions on the day in question. She habitually wrote in her diary the daily temperatures and weather conditions as they were observed by her and reported over the radio. According to her notes the temperature was 18 degrees, it was cloudy, windy and snowy.

Claimant's medical testimony came from Dr. Scott, his treating physician, and Dr. Bratrud, a heart research specialist from California. Sharply conflicting medical testimony was given by Dr. Sifford, who was called by the appellants. Since the trial court found in favor of claimant we will summarize only the evidence tending to support the claimant. See *Suhm v. Volks Homes, Inc.,* 219 Kan. 800, 549 P.2d 944.

Dr. Duane L. Scott, a physician and surgeon, testified that he first examined the claimant on February 27, 1974. At that time he believed that claimant had suffered an acute myocardial infarction. However, subsequent electrocardiograms and enzyme tests failed to confirm the presence of a heart attack. Claimant was treated with medication, including anticoagulants, and then released. On May 13, 1974, claimant was readmitted with a definite myocardial infarction and remained in the hospital from May 13, 1974, until June 3, 1974. Dr. Scott advised claimant to limit his activities to a marked extent. In Dr. Scott's opinion, the episode of chest pain and the later heart attack were related. "In my opinion," he stated, "the extreme cold coupled with the physical exertion on that February day set the stage of Mr. Makalous' heart attack, which rapidly followed his exposure to these elements. His symptomatology is too closely related to believe otherwise." Dr. Scott advised claimant that he could return to work for the respondent in warm weather but he should not work in the wintertime, since that would lead to more heart problems. Claimant could operate a truck or a motor grader in the wintertime if it was heated, provided he did not exert himself too much.

Dr. Bratrud, who had a professional background in surgery and

pathology, testified at the hearing after having read the testimony of the claimant and the medical records. His research in performing autopsies on people who had died with coronary thrombosis indicated there was a 98% incidence of intimal hemorrhages in the coronary arteries when those deaths occurred. He testified that an intimal hemorrhage is the first thing that occurs, that the hemorrhage progresses and develops into a blood clot which in turn progresses in size until a myocardial infarction results. He was of the opinion that the claimant suffered an intimal hemorrhage on that cold day in February when it was 18 degrees with a wind chill factor of below zero. This was evidenced by the chest pain. He was of the further opinion that claimant suffered at least a half dozen intimal hemorrhages thereafter over a period of six or eight weeks which were causally connected and culminated in a severe anterior myocardial infarction. The infarction was established by the enzyme tests and electrocardiograms in May. He testified that exertion coupled with severe cold increases the incidence of heart attacks and that the severe cold on February 21 was a precipitating external cause of claimant's present disability.

Now we turn to the heart amendment, K.S.A. 44-501, which was adopted in 1967. This portion of 44-501 was not changed by later amendments. The heart amendment reads:

". . . Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the workman's usual work in the course of the workman's regular employment."

Ever since the heart amendment was adopted this court has had to struggle with the "usual vs. unusual" wording of the amendment. In *Nichols v. State Highway Commission*, 211 Kan. 919, 508 P.2d 856, we said:

"The legislative intent in enacting the so-called heart amendment to K.S.A. 44-501 (now K.S.A. 1972 Supp. 44-501) was to limit and restrict the application of that statute so far as 'heart cases' were concerned.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"What is usual exertion, usual work, and regular employment as those terms are used in the 1967 amendment to K.S.A. (now 1972 Supp.) 44-501 will generally depend on a number of surrounding facts and circumstances, among which the daily activities of the workman may be one, but only one, among many factors.

"Whether the exertion of the work necessary to precipitate a disability was more than the workman's usual work in the course of his regular employment presents a question of fact to be determined by the trial court." (Syl. 1, 3, and 4.)

See also *Lentz v. City of Marion*, 222 Kan. 169, 563 P.2d 456.

A new approach to the heart amendment surfaced in *Dial v. C. V. Dome Co.*, 213 Kan. 262, 515 P.2d 1046. In *Dial* the claimant suffered a cerebral vascular accident (heatstroke) which was precipitated by an environmental hazard, oppressive heat.

Although a cerebral vascular accident caused by the exertion of a workman's usual work was made a non-compensable injury by the heart amendment, it was established in *Dial* that an external force other than exertion was the factor which precipitated the cerebral vascular accident. Medical testimony established the cause to be heat in the working environment, an external force. Even prior to the heart amendment this court had approved an award for disabilities resulting from heatstroke. See *Taber v. Tole Landscape Co.*, 181 Kan. 616, 313 P.2d 290. So — there was no doubt in *Dial* that the cerebral vascular accident suffered by the claimant was compensable, unless it was precluded by the heart amendment.

In *Dial* we held:

"The 'heart cases' to which the amendment applies are those where the exertion of the claimant's work is the agency 'necessary to precipitate the disability.'

"Where the claimant's disability is the product of some external force or agency, and not of the exertion of the claimant's work, the heart amendment has no applicability. This is true even though a coronary or cerebrovascular injury may be one manifestation of the injury.

"Where exertion is not the agency which produces the workman's disability, the usual vs. unusual exertion test of the heart amendment is irrelevant." (213 Kan. 262, syl. 2, 3, and 4.)

After *Dial* it was urged in *Suhm v. Volks Homes, Inc.*, supra, that emotional stress connected with the claimant's usual work supplied the unusual exertion necessary to overcome the thrust of the heart amendment. In *Suhm* we recognized the external force exception which had surfaced in *Dial*. We reaffirmed the rule that the heart amendment applies only to those cases where the *exertion* of claimant's work is the agency which precipitates the injury. *Suhm* was an exertion case for there was no clear medical testimony that emotional stress was an external force which precipitated claimant's heart attack. The case was decided by applying the usual vs. unusual exertion guidelines.

After *Dial* and *Suhm* the case of *Woods v. Peerless Plastics, Inc.*, 220 Kan. 786, 556 P.2d 455, appeared before this court. In *Peerless Plastics* the claimant suffered a heart attack while carry-

ing heavy pipe outdoors in the cold January air. On appeal it was unsuccessfully argued that the cold was an external force which produced the injury rather than the exertion of the work. We denied the claim saying:

".. . In *Dial* the heat was an external force, wholly independent of the workman's exertion, *which precipitated* the vascular activity. We distinguish *Dial* from the case at bar because here the record does not disclose a causal connection between cold weather and heart failure." (p. 790.)

On reading our previous cases it is clear that heat and cold in the working environment are recognized as external forces which can cause injury. Heat can cause heatstroke. Cold can cause frostbite and, after examining the record in the present case, there is expert medical evidence available that extreme cold coupled with outdoor exertion can cause a heart attack. Here the trial court held that extreme cold was the cause which precipitated the heart attack.

Appellants, after reviewing our heart cases, argue that to render the heart amendment irrelevant an external force present in the working environment must be the sole cause of the heart attack. In support of this argument they quote from the *Dial* and *Suhm* cases. We acknowledge that standing alone the excerpts from those cases tend to indicate the conclusion they urge in this case; however, we cannot agree with that conclusion.

According to the findings of fact the exertion of the work had little if any appreciable effect in producing the heatstroke in *Dial.* The analogies used in arriving at our conclusion in *Dial* present factual situations in which the exertion of the work does not contribute to the possible cause of injuries and we conclude by saying:

".. . [I]t was not the legislative intent that the amendment apply to this sort of case. Where the disability is the product of some external force or agency, and not of the exertion of the claimant's work, the heart amendment has no applicability. In such a case, where exertion is not the agency 'necessary to precipitate the disability,' the usual vs. unusual exertion test applied in our previous heart amendment cases is irrelevant. Instead, the customary standards are to be applied in determining whether the injury was accidental, and whether it arose out of and in the course of the workman's employment." (*Dial v. C. V. Dome Co.,* supra, p. 268.)

It is understandable that the appellants in the present case argue that *Dial* can be distinguished since here it is admitted the intimal hemorrhage was a product of both the usual exertion of

the work and the extreme environmental conditions present on February 21. The claimant stipulated below that he was doing the usual work in the course of his regular employment. He further testified that the exertion of the work was no more than usual when he suffered injury.

However, we do not believe *Dial* can be distinguished on the facts from the present case even though the findings did focus on the external force (heat) as the causative factor which precipitated the accident (heatstroke). Under the evidence in *Dial* claimant was working in close quarters as a carpenter when he was overcome by heatstroke. Heatstroke results from a cerebral vascular hemorrhage. The usual physical exertion of the work was present even though "no mention is made in the testimony of *exertion* as a causative factor." If we should hold that an external force cannot produce a cardiac or vascular injury under the heart amendment when a claimant is engaged in his usual work, we would practically eliminate external forces as possible producing causes of these injuries. Every injury to be compensable must be by accident arising out of and in the course of employment. This presupposes the workman will be working and subjecting himself to the usual exertion of the job, whether it be pounding nails as a carpenter or pulling posts as a highway worker. The external force rule in heart cases as declared in *Dial* should not be construed to preclude recovery merely because the usual exertion of the claimant's work may have contributed in some degree to producing the injury which resulted in disability.

Most accidents can be traced to several contributing factors. Heart cases are no exception. Working conditions requiring either unusual exertion or exposure to an oppressive environment may precipitate coronary or cerebrovascular activity. In cases of coronary or coronary artery disease or cerebrovascular injury if no unusual exertion from the work is present there can be no compensation paid under the heart amendment when exertion precipitates the injury; but when it is established that the injury and the resulting disability are the product of some extreme external force in the working environment then compensation may be payable. To support a finding that claimant's cardiac or vascular injury is the product of some extreme external force the presence of a substantial external force in the working environment must be established and there must be expert medical testimony that

the external force was a substantial causative factor in producing the injury and resulting disability.

In *Suhm* we held:

"Whether the exertion of the work necessary to precipitate a disability was more than the workman's usual work in the course of his employment and whether an external force or agency produced a workman's disability are questions of fact to be determined by the trial court." (219 Kan. 800, syl. 4.)

In our present case an extreme external force in the working environment was established (freezing cold and windy weather). Expert medical testimony in the record indicates that these external forces precipitated and produced the claimant's injury (intimal hemorrhage and myocardial infarction). So the heart amendment is irrelevant and we must be guided by the usual rules and requirements in workmen's compensation cases.

In this appeal appellants argue that no disability resulted from the intimal hemorrhage occurring on February 21, because there was evidence after February 27 that the enzyme tests and electrocardiograms presented a near normal picture. They further contend the lapse of two and a half months between the chest pains on February 21, and the myocardial infarction on May 13, renders the causal connection between the extreme cold and the ultimate injury resulting in disability highly questionable.

When an actual heart attack occurs outside of working hours at some period of time after the extreme environmental hazard has ended the burden of proving a causal connection is in the nature of things heavier. The connection between the external force and the injury in such cases is more tenuous and the possibility of separate intervening causes is enhanced. The same is true of the ultimate consequences that flow from other types of injuries.

However, when an injury under the Workmen's Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a distinct disability in another part of the body, is compensable if it is a direct and natural result of the injury. See *Reese v. Gas Engineering & Construction Co.,* 219 Kan. 536, Syl. 3, 548 P.2d 746. In *Reese* the initial injury was limited to claimant's left leg but some months later a new and distinct disability surfaced, a back disability. The back disability was held to be compensable since it was shown to be a direct and natural consequence flowing from the initial injury to the leg. The time

lapse in such cases may be only a few months or it may cover a period of over a year. See *Gillig v. Cities Service Gas Co.,* 222 Kan. 369, 564 P.2d 548.

In the present case the claimant had no history of heart disease. The intimal hemorrhage which was the initial injury occurred while claimant was working. This occurrence was evidenced by immediate chest pain which limited his physical activities and was progressive in intensity until he went to a doctor six days later. Thereafter he suffered a myocardial infarction. There was medical testimony to support the finding that the myocardial infarction suffered in May was a direct and natural consequence flowing from the intimal hemorrhage which occurred February 21. Sufficient causal connection was established.

Appellants attack many additional findings of the district court which findings need not be discussed individually in this opinion. We have examined all eighteen points specified and there is substantial evidence to support the necessary findings.

The appellate jurisdiction of this court in workmen's compensation cases is limited to reviewing questions of law. (K.S.A. 1976 Supp. 44-556.) Whether the district court's judgment in a compensation case is supported by substantial competent evidence is a question of law as distinguished from a question of fact. (*Knoble v. National Carriers, Inc.,* 212 Kan. 331, 510 P.2d 1274.) In reviewing the record to determine whether it contains substantial evidence to support the district court's factual findings, this court is required to review all the evidence in the light most favorable to the prevailing party below; when the findings of fact made by the district court are based on substantial evidence they are conclusive. See decisions collected in 5 Hatcher's Kansas Digest (Rev. Ed.), Workmen's Compensation, Sec. 153.

The findings are conclusive in this case and the judgment is affirmed.