No. 50,704

STATE OF KANSAS, *Appellee*, v. ALBERT L. WILSON, *Appellant.*

(608 P.2d 1344)

Opinion filed April 5, 1980.

*Mark F. Anderson,* of Kidwell & Williamson, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Paul W. Clark,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Neal Brady,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by Albert L. Wilson, following his jury conviction of aggravated robbery, K.S.A. 21-3427, aggravated burglary, K.S.A. 21-3716, and felony murder, K.S.A. 21-3401. Wilson was sentenced to consecutive terms of fifteen years to life, five to ten years, and life imprisonment. The principal issues on appeal are whether defendant's constitutional right to a speedy trial was infringed or alternatively whether his due process rights were violated by the State's action in bringing the matter to trial. A chronological statement of the background facts is necessary to an understanding of the issues.

Wilson escaped from the Kansas State Penitentiary at Lansing, Kansas, in June, 1975. During the next several months he traveled extensively, spending some time in Wichita and some time in the State of California. On August 28, 1975, the body of Johnnie Mae Hull Rider was found in her Wichita home. She had sustained some 48 stab wounds; knives were left in her back, chest, and throat. The front door of the house had been "kicked in"; various items of personal property and the victim's car were missing. A complaint, charging Wilson with felony murder, aggravated robbery, and aggravated burglary was filed on October 3, 1975; this was given Case No. 75 CR 1451. Two weeks later, Wilson was arrested in Missouri. He waived extradition and was returned to the Kansas State Penitentiary.

The defendant was taken before a magistrate at Wichita on October 28, 1975, for his first appearance on the murder and related charges. Counsel was appointed, and a preliminary hearing date was set. Short continuances were granted, one at defendant's request and one on the State's motion.

The State of California also had a pending first-degree murder charge against defendant Wilson, and California was seeking to bring him to trial. A crucial witness in both the California and Kansas prosecutions, Mrs. Julie Adams, was in custody in California. The Kansas court, on motion of the State, removed the pending case from the docket on November 21, 1975, over defendant's objection. No preliminary hearing was then held. Defendant was extradited, was tried and convicted of first-degree murder in California, and was sentenced to death. Before the sentence was carried out, the California death penalty law was declared unconstitutional. On July 29, 1977, the sentencing court reduced Wilson's sentence to life imprisonment, concurrent with any other sentence previously imposed, and ordered that Wilson be returned to Kansas to complete serving his earlier Kansas sentence. Wilson was returned to the Kansas State Penitentiary on or about July 30, 1977.

On February 1, 1978, a new complaint (Case No. 78 CR 231) charging Albert L. Wilson with the aggravated robbery and felony murder of Robert Hind and Jerry Wilson, and including the earlier charges of aggravated burglary, aggravated robbery, and felony murder of Johnnie Mae Hull Rider, was filed in Sedgwick

County. Upon learning of the new charges, defendant filed a motion for a speedy trial. He was taken to Wichita and first appeared before the court on May 10, 1978; counsel was appointed. On July 20, 1978, defendant appeared with counsel before the trial court; Cases No. 75 CR 1451 and 78 CR 231 were consolidated; preliminary hearing was waived; and a trial date of September 18 was agreed upon by stipulation. On defendant's motion, the trial was set over until October 16, 1978, on which date trial commenced. The Hind-Wilson charges added by the February 1 complaint were dismissed before trial, and defendant was tried and convicted of the original Rider charges of felony murder, aggravated robbery, and aggravated burglary. The sentences imposed were made consecutive to each other but concurrent with the California and the earlier Kansas sentences.

Defendant alleges no denial of statutory speedy trial rights, and therefore we need not consider the time frames fixed by various statutes. Instead, defendant alleges that he has been denied his constitutional right to a speedy trial, as preserved by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Bill of Rights. The Sixth Amendment guarantee of the right to a speedy trial is enforceable against the states through the due process clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 18 L.Ed.2d 1, 87 S.Ct. 988 (1967). The right preserved by both state and federal constitutional mandate is the same: the right of one accused of crime to be tried promptly and with due dispatch. The right attaches when an individual becomes an "accused." *United States v. Marion,* 404 U.S. 307, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971).

The right applies not only when the accused is within the jurisdiction but also when the accused is confined in a penal institution in another jurisdiction. For example, when a federal prisoner demands to be brought to trial on pending State charges, the constitution imposes on the State the duty to "make a diligent, good faith effort" to bring him to trial. *Smith v. Hooey,* 393 U.S. 374, 383, 21 L.Ed.2d 607, 89 S.Ct. 575 (1969); and see *Dickey v. Florida,* 398 U.S. 30, 26 L.Ed.2d 26, 90 S.Ct. 1564 (1970), and *Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 35 L.Ed.2d 443, 93 S.Ct. 1123 (1973).

The determination of a constitutional violation of the right to speedy trial depends upon the facts and circumstances of each

case; the mere passage of time alone is not determinative. *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), adopts a test of balancing the action or inaction of the State with that of the accused. Four relevant factors are identified: length of the delay; the defendant's assertion of his right to speedy trial; the reason for the delay; and prejudice resulting to the defendant. We adopted these criteria (noting that the list is not exclusive) in *State v. Otero,* 210 Kan. 530, 532-33, 502 P.2d 763 (1972), and we have adhered to it in later cases. *State v. Fink,* 217 Kan. 671, 678, 538 P.2d 1390 (1975); *State v. Cuezze, Houston & Faltico,* 225 Kan. 274, 589 P.2d 626 (1979): *State v. Ward,* 227 Kan. 663, 608 P.2d 1351 (1980). When a defendant's right to speedy trial has been violated, the "only possible remedy" is dismissal of the charges. *Strunk v. United States,* 412 U.S. 434, 440, 37 L.Ed.2d 56, 93 S.Ct. 2260 (1973); *State v. Cuezze, Houston & Faltico,* 225 Kan. 274; *Williams v. Darr,* 4 Kan. App. 2d 178, 603 P.2d 1021 (1979).

We turn now to examine the four *Barker v. Wingo* factors in the light of the facts of this case. The first is the length of the delay. The right to speedy trial attached at the time the complaint was filed and the warrant issued, October 3, 1975, or at the latest on the date of arrest, October 17, 1975. See *Dillingham v. United States,* 423 U.S. 64, 46 L.Ed.2d 205, 96 S.Ct. 303 (1975). Trial commenced on October 16, 1978; the elapsed time was about three years. Times greater than three years have been found nonviolative of the speedy trial right. *Barker v. Wingo,* 407 U.S. at 514 (five years); *State v. Dolack,* 216 Kan. 622, 636, 533 P.2d 1282 (1975) (over 3 years); *State v. Hemminger,* 210 Kan. 587, 502 P.2d 791 (1972) (over 4 years). Although the delay in itself does not establish a violation, extended delay does serve to trigger examination of the other three factors. *Barker v. Wingo,* 407 U.S. at 530.

The second *Barker* factor requiring consideration is the defendant's assertion of his right to, and his request for, speedy trial. He objected to the continuance of the Kansas proceedings in November, 1975, and asked for trial in Kansas; coupled with this was his objection to extradition. From November, 1975, until February, 1978, however, defendant took no action and made no request for disposition of the Kansas charges which he knew were pending against him. Although the Supreme Court has explicitly rejected a requirement that an accused must assert his right to a speedy trial, *Barker v. Wingo,* 407 U.S. at 529, cases where a

constitutional violation has been found generally arise after the State has failed to respond to repeated demands for speedy trial. See, for example, *May v. Georgia,* 409 F.2d 203 (5th Cir. 1969). The absence of demand, however, must be weighed with other factors. Defendant was given a prompt trial of the California charge, although this resulted in delay of the Kansas proceeding. Kansas failed to bring defendant to trial promptly upon his return to this state in the summer of 1977; but he made no demand for trial for some six months after his return. Once he did so, the State moved with reasonable promptness.

The third *Barker* factor is the cause of the delay. Here most of the delay is attributable to the prosecutor's decision to suspend proceedings and to allow California to complete its prosecution before trial on the Kansas charges. As we noted in *State v. Pruett,* 213 Kan. 41, 515 P.2d 1051 (1973):

"Throughout the judicial history of this state this court has consistently held that a criminal proceeding is a matter of state concern and the control of it is in the county [or district] attorney. . . .

. . . .

"[T]he power effectively to control a prosecution involves the power to discontinue, if, and when, in the opinion of the prosecutor in charge this should be done." (p. 45.)

An accused has no right to require that pending charges be prosecuted to termination in the jurisdiction which first has custody of him, before removal to a different jurisdiction for trial on other charges. *Beavers v. Haubert,* 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573 (1905). As the court observed in that case:

"[S]uppose [a defendant] is charged with more than one crime, to which does the right [to speedy trial] attach? . . . He cannot be tried for all at the same time, and his rights must be considered with regard to the practical administration of justice. . . . The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. . . . It does not preclude the rights of public justice. It cannot be claimed for one offense and prevent arrest for other offenses; and removal proceedings are but process for arrest—means of bringing a defendant to trial." 198 U.S. at 86-87.

*Beavers* has not been overruled; it is relied upon in *United States v. Stein,* 18 F.R.D. 17, 21 (S.D. N.Y. 1955), and cited by the Supreme Court as recently as *United States v. Marion,* 404 U.S. 307, 315, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971). In *Stein,* the defendant was charged by separate federal indictments in New York and California. The court said that the defendant:

"was entitled to a speedy trial on each indictment but obviously both trials could not proceed simultaneously. A defendant so circumstanced cannot dictate which of the two indictments should be tried first. . . . The orderly administration of criminal justice leaves that choice with the prosecuting officials to be exercised in good faith." (p. 21.)

We agree with that analysis.

The reason for permitting California to proceed first was a practical one: a principal witness was in custody in that jurisdiction. We conclude that the delay of the Kansas case pending disposition of the California charges, through July 29, 1977, was reasonable and cannot be charged against the State of Kansas as needless delay.

After removal of the California impediment, and after Wilson was returned to this state, however, Kansas was lax in resuming prosecution. No reason for the six-month delay, from July 29, 1977 through January, 1978, is reflected in the record. This delay weighs against the State.

The fourth and final *Barker* factor is that of actual prejudice to the defendant in the preparation and presentation of his defense. Defendant enumerates five sources of prejudice which he alleges were caused by the delay. The first of these is his conviction of murder in the State of California. This conviction was not caused by Kansas delay; it resulted from his prosecution and trial in California. Whether that trial and conviction was before or after termination of the Kansas prosecution is not material here; it is not a prejudicial result of Kansas delay.

The second prejudice which he contends was caused by the delay is that he has received consecutive sentences. As we noted earlier, the California sentence is concurrent with other sentences imposed earlier, and the Kansas sentences, though consecutive to themselves, are concurrent with the California and earlier Kansas sentences. Delay caused no prejudice in sentencing.

The third factor of which defendant complains is his claim that his defense was severely limited and he was unable to establish his expected defense of alibi. He contends that his memory of places and people during the time he was on "escape" status has faded; that defense counsel were unable to contact witnesses because defendant was unable to recall the aliases he used and the names of airlines or bus companies he patronized; and further, that witnesses who were contacted by counsel had faded memories and were uncertain of dates, times, and places.

The record simply does not support these claims. A reading of defendant's 1978 testimony indicates that although he could not completely reconstruct his whereabouts during the critical period, he did retain good recall in 1978 of events in 1975. Counsel was appointed for him in 1975 and could have contacted witnesses had defendant *then* been able to describe and list them. The difficulty appears to have been that the proposed witnesses were persons with whom defendant had chance and fleeting contact—people whom he met in bars in Florida and in Colorado, for example. Finding such witnesses, most of whose names and addresses are unknown, is difficult under optimum circumstances, but defendant and counsel had that opportunity in 1975 if they wished to exercise it.

Next, defendant complains of anxiety and stress, not because of the pending Kansas charges, but because he was sentenced to death by the California court and he spent nine months on "death row" in San Quentin penitentiary, before his death sentence was reduced to life imprisonment. The California death sentence, however, was a result of the California prosecution and application of the law of that state; neither the imposition of the sentence nor the anxiety suffered by the defendant while under the sentence is attributable to the delay in the Kansas prosecution.

Finally, Wilson contends that the delay was intentionally brought about by the Kansas prosecutor to gain "tactical advantage" or to "harass" this defendant. He contends that Kansas was aware of California's mandatory death penalty law and released him to California with the expectation that he would be convicted and executed, thus making trial in Kansas unnecessary. As we see it, the prosecutor simply made a choice as to which trial should be held first, a proper matter for prosecutorial discretion. The prosecution gained no "tactical advantage" in the Kansas prosecution by the delay, and the fact that a more serious charge, or at least one carrying a more severe penalty, was tried first does not constitute harassment.

Upon consideration of all of the *Barker* factors in concert, we conclude that Wilson was not denied his right to a speedy trial. Although the delay was sufficient to trigger consideration of all of the factors, their consideration as a whole weighs against the defendant. The State exercised its allowable discretion in consenting to trial of the California charges before trial of the Kansas

case. Discretion may properly be exercised for reasons consistent with the public interest to defer trial of one charge while another is handled to completion; charges in separate jurisdictions cannot be tried together; one or the other must be tried first. We find no abuse of discretion in the exercise of the prosecutorial function.

In separate arguments, defendant contends that he was deprived of due process by being first sent to California for trial, and he claims that the evidence presented is insufficient to support the conviction. We have reviewed the authorities cited in support of the first of these issues and find them factually dissimilar and unpersuasive. And we have reviewed the record and find that the evidence introduced at the trial, when viewed in the light most favorable to the prosecution, is amply sufficient. A rational trier of the fact could readily have found Wilson guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979); *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979).

The judgment is affirmed.