No. 57,334

STATE OF KANSAS, *Appellee*, v. SHERMAN L. GALLOWAY, *Appellant*.

(708 P.2d 508)

Opinion filed October 25, 1985.

*Martha Coffman-Gallagher*, of Coffman-Gallagher & Gallagher, of Lawrence, argued the cause, and *Carl A. Gallagher*, of the same firm, was on the brief for appellant.

*Glenn R. Trapp*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, *James E. Flory*, district attorney, and *Margaret Lindeberg-Johnson*, assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by the defendant, Sherman L. Galloway, who was convicted of rape (K.S.A. 21-3502), aggravated sodomy (K.S.A. 21-3506), aggravated robbery (K.S.A. 21-3427), and kidnapping (K.S.A. 21-3420). This case has been before this court twice on interlocutory appeals by the State. See *State v. Galloway*, 232 Kan. 87, 652 P.2d 673 (1982) (hereinafter referred to as *Galloway I*); *State v. Galloway*, 235 Kan. 70, 680 P.2d 268 (1984) (hereinafter referred to as *Galloway II*).

The facts are undisputed and were set forth in *Galloway II* as follows:

" 'On May 12, 1981, at approximately 12:30 a.m., Ms. G, a Kansas University (KU) graduate student, was attacked by a black male as she walked home. The man

forced her into his car and drove her to Clinton Park in Lawrence where he raped her and sodomized her. He then left the park taking with him Ms. G's clothing, a set of keys to KU buildings issued to her, a backpack containing a textbook with the victim's name in it, a swim cap, a coin purse and other items. Ms. G went to her apartment immediately after the incident and reported it to the police, who came and took her statement that night. The next day she aided the police in assembling a composite of her assailant and notified them of the items of personal property taken from her by the rapist.

" 'On July 8, 1981, at approximately 10:20 p.m., Ms. R was jogging on the KU campus when she was attacked from behind by a black male wearing a sleeveless tank top shirt. He threatened Ms. R with a knife and dragged her down a hill into a bushy area where he raped and sodomized her. Ms. R managed to struggle free and run to a nearby street where she received a ride from a passing motorist. She notified the KU police, who went to the area and found a billfold containing the driver's license of Sherman L. Galloway. The next day officers of the KU police department (KUPD) submitted to Ms. R a photographic lineup of eight black males. From the photographs she identified Sherman L. Galloway.

" 'During the afternoon of July 9, 1981, a warrant for the arrest of Sherman L. Galloway was issued charging him with the rape (K.S.A. 21-3502) and aggravated sodomy (K.S.A. 21-3506) of Ms. R. The same day Lt. Detective Vic Strnad of the KU police department obtained a search warrant for the residence of Sherman Galloway. The officers were authorized to seize "one (1) sleeveless tank top shirt appearing to be brown in color with horizontal stripes and one (1) knife with a curved blade approximately ¾ inch wide and approximately three to four inches long."

" 'KU Detectives Strnad and Mike Riner and Lawrence police Detective Mike Hall executed the warrants during the evening of July 9, 1981. Detective Hall found a knife, which he seized, in the drawer of a nightstand. Next to the knife he observed a ring with KU keys on it. Detective Hall showed the keys to Detective Riner who also recognized them as KU keys. The officers then seized the keys. Other property taken in the search included drug paraphernalia and a portable food warmer marked "Property of Domino's Pizza. If found return to Domino's for reward."

" 'On July 14, 1981, Detective Hall contacted Ms. G and showed her a ring of KU keys. She identified the keys as those taken from her by the person who sexually assaulted her on May 12. She later identified Galloway as her assailant from a photographic lineup.

" 'On July 22, 1981, Detective Hall obtained a warrant authorizing another search of Galloway's residence, along with his automobile. Property listed on this search warrant included most of the things taken from Ms. G when she was attacked. During this search officers found and seized Ms. G's backpack, textbook, class notes and swim cap.

" 'On July 24, 1981, an amended complaint was filed charging Galloway with rape and aggravated oral sodomy concerning Ms. R and kidnapping (K.S.A. 21-3420), aggravated robbery (K.S.A. 21-3427), rape and aggravated oral sodomy concerning Ms. G. The Ms. R charges were later severed from the Ms. G charges.

" 'On September 25, 1981, Galloway filed a motion to suppress the KU keys seized from his residence on July 9, 1981. The trial court granted the motion and

the State took an interlocutory appeal. The Court of Appeals, in an unpublished opinion, upheld the trial court. This court then granted the State's petition for review.' 232 Kan. at 87-89.

"This court in *Galloway I* reversed the district court's suppression of the seized keys and the Court of Appeals' affirmance thereof and remanded the case for further proceedings. The issue in *Galloway I* focused upon the State's right to seize the ring of keys during the execution of the search warrant. As indicated in the statement of facts, the charges relative to victims Ms. R and Ms. G, while contained in one complaint, had been severed. Defendant has been convicted of the charges relative to victim Ms. R and the conviction has been affirmed by this court in an unpublished opinion. (*State v. Galloway,* No. 54,304, filed March 26, 1983.) The issues herein solely relate to the charges pending relative to victim Ms. G.

"After the case was remanded to the district court for further proceedings, certain evidentiary motions were heard. The district court sustained defendant's motions: (1) to suppress a composite photograph of a completed 'Identi-Kit'; and (2) the photographic lineup identification of the defendant by the victim. Additionally, the district court held, on the State's motion in limine, the State would not be permitted to introduce any evidence relative to observation of the keys by defendant's wife. . . . The State then filed this interlocutory appeal pursuant to K.S.A. 22-3603 as to all three adverse rulings." 235 Kan. at 71-73.

The Court of Appeals in *Galloway II* dismissed the appeal because there were allegedly no final orders to appeal from. This court granted the State's petition for review. In *Galloway II* this court determined it had jurisdiction over the interlocutory appeal, reversed the Court of Appeals' dismissal of the appeal, reversed the decision of the trial court, and remanded.

The defendant then filed a motion on April 27, 1984, for an order discharging defendant for failure to grant him a speedy trial. This motion was denied on May 4, 1984, and the matter proceeded to trial by jury on May 7, 1984. The only fact issue at the trial was the identity of defendant Galloway as the rapist. The defendant was convicted on all counts and filed a timely appeal.

The first point raised by the defendant on the appeal is that the trial court erred in overruling his motion to discharge on May 4, 1984, because he was denied his constitutional right to a speedy trial. It should be noted at the outset that the defendant does not claim that his *statutory* right to a speedy trial under K.S.A. 22-3402 has been violated. He claims only a violation of his *constitutional* right to a speedy trial. The general rules regarding the constitutional right of a defendant to a speedy trial were recently discussed in *State v. Rosine,* 233 Kan. 663, 666-67, 664 P.2d 852 (1983), in which the court stated:

"The Sixth Amendment to the United States Constitution, as pertinent here, provides:

" 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .'

Section Ten of the Kansas Constitution Bill of Rights similarly proclaims:

" 'In all prosecutions, the accused shall be allowed . . . a speedy public trial . . . .'

"The leading United States Supreme Court case on the right to speedy trial is *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972). In *Barker* more than five years elapsed between defendant's arrest and trial. The United States Supreme Court adopted a case-by-case flexible approach for determining whether an accused's constitutional right to a speedy trial had been violated, stating:

" 'A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

" 'The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' 407 U.S. at 530.

"Less than five months after *Barker* we adopted the *Barker* four-point analysis in *State v. Otero*, 210 Kan. 530, 502 P.2d 763 (1972). In *Otero* there was nearly an eight-year delay between charges being filed and trial. The court found this delay violated defendant's right to a speedy trial and reversed his conviction. Since *Otero* the *Barker* analysis has been applied a number of times by Kansas appellate courts. *E.g., State v. Calderon*, 233 Kan. 87, 94, 661 P.2d 781 (1983); *State v. Hunt*, 8 Kan. App. 2d 162, 167, 651 P.2d 967 (1982); *Williams v. Darr*, 4 Kan. App. 2d 178, 182-83, 603 P.2d 1021 (1979); *State v. Wilson*, 227 Kan. 619, Syl. ¶ 2, 608 P.2d 1344 (1980); *State v. Ward*, 227 Kan. 663, Syl. ¶ 4, 608 P.2d 1351 (1980); *State v. Taylor*, 3 Kan. App. 2d 316, 321-22, 594 P.2d 262 (1979); *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 589 P.2d 626 (1979); *State v. Fink*, 217 Kan. 671, Syl. ¶ 4, 538 P.2d 1390 (1975); *State v. Smith*, 215 Kan. 34, 40, 523 P.2d 691 (1974); and *State v. Hemminger*, 210 Kan. 587, 593, 502 P.2d 791 (1972)."

The basic issue presented here involves the effect of an interlocutory appeal by the State, filed pursuant to K.S.A. 22-3603, on a defendant's constitutional right to a speedy trial. The Kansas Supreme Court has not specifically addressed the issue. However, the court has addressed a similar issue in regard to the Kansas speedy trial statute, K.S.A. 22-3402, which provides in part as follows:

"**22-3402. Discharge of persons not brought promptly to trial.** (1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge,

such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

"(2) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

K.S.A. 22-3603, which authorizes interlocutory appeals by the State, provides that further proceedings in the trial court shall be stayed pending determination of the appeal. Where an interlocutory appeal is taken by the State, K.S.A. 22-3604 requires without equivocation that the time during which an appeal by the prosecution is pending shall not be counted for the purpose of determining whether a defendant is entitled to discharge under K.S.A. 22-3402.

In *State v. Grimes*, 229 Kan. 143, 622 P.2d 143 (1981), it was held that K.S.A. 22-3604 applies only to interlocutory appeals authorized and taken pursuant to K.S.A. 22-3603, and where the State takes an unauthorized interlocutory appeal, the time during which the interlocutory appeal is pending should not be charged against the accused in computing the 90- and 180-day time periods set by K.S.A. 22-3402. See also, *State v. McQuillen*, 236 Kan. 161, 689 P.2d 822 (1984). In the present case, the two interlocutory appeals taken by the State in *Galloway I* and *Galloway II* mentioned above were held to be authorized by K.S.A. 22-3603 and, therefore, the period in which those appeals by the prosecution were pending would not be counted for the purpose of determining whether the defendant's statutory right to a speedy trial was denied under K.S.A. 22-3402. The question for us to determine is whether an interlocutory appeal taken by the State which delays trial should be charged against the State in determining whether the defendant's constitutional right to a speedy trial has been violated.

A survey of the cases from other jurisdictions on this issue reveals a split of authority. In several cases handed down by different United States Courts of Appeal, it has been held that, in calculating the length of delay in bringing a defendant to trial for purposes of determining whether he has been denied his right to a speedy trial, the period of delay attributable to an interlocutory

appeal by the government should not be considered unless the interlocutory appeal was taken in bad faith or for the sole purpose of delay. See, for example, *United States v. Herman*, 576 F.2d 1139 (5th Cir. 1978); *United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975); and *United States v. Bishton*, 463 F.2d 887, 150 U.S. App. D.C. 51 (1972). In *United States v. Herman*, the defendant appealed from a conviction of aggravated robbery and first-degree murder arguing, *inter alia*, that the government had denied his constitutional right to a speedy trial by taking an interlocutory appeal. The delay in trial totaled 22 months and 20 days. Some of the delay was attributable to defendant but most of the delay, almost 15 months, resulted from the government's decision to take an interlocutory appeal from an order of the district court suppressing evidence. The court, in the opinion, held that an interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay. However, when the government acts arbitrarily, negligently, or in bad faith, the delay resulting from an interlocutory appeal may not be justified. The court suggested that three factors must be considered in connection with the interlocutory appeal:

(1) The necessity of the appealed question to the government's case;

(2) the strength of the government's position on that issue; and

(3) the seriousness of the crime.

The *Herman* court approved the observations of the court in *United States v. Bishton* that, whenever the government's action at any stage of the proceeding indicates bad faith, neglect, or a purpose to secure delay itself or some other procedural advantage, the resulting delay is not justified. The court analyzed the interlocutory appeal previously taken by the government and concluded that the question the government presented in the interlocutory appeal was an important one and the government's position was strong, although it did not prevail. The seriousness of the charge also influenced the court toward the view the government had taken a proper interlocutory appeal to have the issue determined prior to trial.

Several state appellate courts have held that, where the prosecution desired to take an interlocutory appeal from an adverse ruling of the trial court on a motion to suppress, the prosecution does not have the right to stay trial and the defendant's right to a

speedy trial continues to run while the interlocutory appeal is being determined. See, for example, *State v. Million*, 120 Ariz. 10, 583 P.2d 897 (1978); *State v. Pfortmiller*, 53 Or. App. 394, 632 P.2d 459 (1981).

We have concluded that as a general rule, an interlocutory appeal taken by the State pursuant to and authorized by K.S.A. 22-3603 justifies an appropriate delay in trial, and that the period during which the interlocutory appeal is pending should not be counted against the State in determining whether a defendant's constitutional right to a speedy trial has been violated. However, where it is shown that the State has taken an interlocutory appeal arbitrarily or negligently or in bad faith, the delay may not be justifiable. In that situation, the time during which the interlocutory appeal is pending may be counted against the State. In *State v. Rosine*, 233 Kan. 663, it was held that in each case a court must balance the action or inaction of the State with that of the accused and consider the four *Barker* factors, including the length of the delay, defendant's assertion of his right to a speedy trial, the reason for the delay, and the prejudice resulting to the defendant.

Using the balancing test and considering those factors in the case now before us, we have concluded that the trial court did not err in denying defendant's motion for discharge on the basis that his constitutional right to a speedy trial had been violated. The record clearly shows that the only causes for trial delay in this case were the two interlocutory appeals taken by the State as a matter of right under K.S.A. 22-3603. The State prevailed in both interlocutory appeals which involved rulings of the trial court holding inadmissible important evidence connecting the defendant with the crime charged. The total time to trial from arraignment was approximately two years and ten months. In *State v. Wilson*, 227 Kan. 619, 608 P.2d 1344 (1980), this court affirmed the conviction where a three-year-period existed between arrest and trial. In *State v. Dolack*, 216 Kan. 622, 636, 533 P.2d 1282 (1975), it was found that there was no abridgment of constitutional rights where more than three years passed. *State v. Hemminger*, 210 Kan. 587, 502 P.2d 791 (1972), reached a like result in a case where over four years passed while the action was pending. In *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972), the United States Supreme Court found no

violation of defendant's right to a speedy trial where more than five years elapsed between his arrest and trial.

Considering the reason for the delay, we have no hesitancy in holding that the State did not act arbitrarily, negligently, or in bad faith in taking the two interlocutory appeals in this case. In both cases, the State prevailed. There was no unreasonable action or delay on the part of the prosecution. We have also considered the remaining two *Barker* factors, which are the defendant's assertion of his right and prejudice to the defendant. The State concedes that the defendant timely asserted his right to a speedy trial. On the record before us, we find that defendant has failed to prove prejudice sufficient to justify a reversal of the trial court. During the period of the delay, the defendant was already incarcerated on the sentence arising from his prior conviction in the case involving the rape of Ms. R, which conviction was affirmed by this court in March of 1983. Furthermore, the record does not show to us that defendant was prejudiced because certain live witnesses were unavailable at the time of trial and it was necessary to use a stipulation as to the testimony of two witnesses and the prior testimony of the victim in another case. We have, thus, considered the four *Barker* factors and hold that the trial court did not err in overruling the defendant's motion for discharge based on a denial of his constitutional right to a speedy trial.

The defendant's second point on the appeal is that he was denied due process of law because of this court's decision in *State v. Galloway*, 232 Kan. 87. The defendant challenges the court's decision in *Galloway I*, raising the same issues raised on that appeal. *Galloway I* involved the seizure of the victim's KU keys at the defendant's apartment. We adhere to our decision in *Galloway I*, and hold that the first interlocutory appeal in this case was correctly decided in accordance with the opinion of Justice Herd.

The defendant's third point is that the trial court erred in admitting evidence of a photographic lineup identification by the victim. This is the identical issue raised and decided in *Galloway II*, 235 Kan. 70. As noted above, *Galloway II* involved the district court's order sustaining defendant's motion to suppress certain evidence. The Court of Appeals dismissed the State's interlocutory appeal on the basis that the appeal was not

authorized by K.S.A. 22-3603. The Supreme Court granted the State's petition for review. *Galloway II* determined that the Kansas appellate courts had jurisdiction to hear and decide the issues raised on the State's interlocutory appeal. The decision of the Court of Appeals dismissing the appeal was reversed, and the Supreme Court then reviewed the decision of the trial court suppressing certain State's evidence and reversed. The case was then remanded for trial.

On this appeal, the defendant's basic argument is that the Supreme Court lacked jurisdiction to determine the issue pertaining to the admissibility of the photographic lineup because the only decision of the Court of Appeals subject to review on the State's petition for review was the jurisdictional issue: whether the interlocutory appeal by the State was a type of interlocutory appeal authorized by K.S.A. 22-3603. We have no hesitancy in holding that, after granting the State's petition for review, the Supreme Court had plenary jurisdiction to review and determine any and all issues in the case which were raised in the interlocutory appeal then before the court. The judicial power of this state is vested in one court of justice which is divided into one Supreme Court, district courts, and such other courts as are provided by law, including the Court of Appeals. Constitution of Kansas, Article 3, Section 1. Under Kansas appellate procedure, appeals pending in the appellate courts may be freely transferred from the Court of Appeals to the Supreme Court either on request of the Court of Appeals (K.S.A. 20-3016), on motion of a party to the appeal (K.S.A. 20-3017), or on order of the Supreme Court (K.S.A. 20-3018). Any party aggrieved by the decision of the Court of Appeals may petition the Supreme Court for review within 30 days after the decision of the Court of Appeals. K.S.A. 20-3018 provides that the procedures governing petitions for review shall be prescribed by rules of the Supreme Court, and the review of any such decisions shall be at the discretion of the Supreme Court.

Under Appellate Court Rule 8.03 (235 Kan. lxxvii), adopted by the Supreme Court, whenever a review of a decision of the Court of Appeals has been granted by the Supreme Court the case is heard on the record and briefs previously filed with the Court of Appeals. Any party may supplement his original brief with additional authorities. When review is granted, if the Supreme

Court finds it has jurisdiction to hear the appeal, it has the authority to determine any appropriate issue presented on the appeal, thus avoiding the delay resulting from a transfer of the case back to the Court of Appeals for a consideration of those issues not previously decided. We find the defendant's contention that the Supreme Court did not have jurisdiction to determine the issues presented in *Galloway II* to be without merit. We adhere to our decision in *Galloway II* as set forth in the opinion of Justice McFarland.

The judgment of the district court is affirmed.