No. 58,574

DeElla Alice Johnson, *Appellee,* v. State of Kansas—Kansas Neurological Institute, and State Self-Insurance Fund, *Appellants,* and Workers' Compensation Fund, *Appellee.*

(727 P.2d 912)

Opinion filed October 31, 1986.

*Randall J. Forbes,* of Frieden & Forbes, of Topeka, argued the cause and was on the briefs for appellants.

*Martha M. Snyder,* of Palmer, Marquardt & Snyder, P.A., of Topeka, argued the cause and was on the brief for appellee, DeElla Alice Johnson.

*Derek J. Shafer,* of Topeka, argued the cause and was on the briefs for appellee Workers' Compensation Fund.

The opinion of the court was delivered by

Lockett, J.: This is a workers' compensation case. The injured worker was employed by the State of Kansas. It was discovered that seven and a half years prior to the present injury she had suffered a similar type injury while working for the State and had been determined to be permanently partially disabled. The Administrative Law Judge (ALJ) found that the Workers' Compensation Fund (Fund) should be assessed a portion of the award since the State had retained a handicapped worker. The Fund

appealed to the Director of Workers' Compensation (Director). The Director ruled that there was not sufficient evidence to show that the employing agency had retained a handicapped worker. The State Self-Insurance Fund then appealed to the district court, which affirmed the Director's decision. On appeal the Court of Appeals ruled on a legal issue determined below but, because there had been no cross-appeal of that legal issue, we accepted the matter for review.

Claimant/appellee DeElla Alice Johnson was a child development specialist and supervisor at the Kansas Neurological Institute (KNI) in Topeka. She had worked at KNI for 23 years. Her duties included dressing, bathing, feeding, transporting, and generally caring for the physical needs of 32 profoundly retarded, nonambulatory adult patients. On August 16, 1982, while pulling a choking patient out of his wheelchair, Johnson injured her back. Her orthopedic surgeon diagnosed her condition as herniated or bulging discs with nerve root compression. She has not been released to work since the day of her injury.

Johnson filed a claim for compensation against respondents KNI and the State Self-Insurance Fund. The Fund was subsequently impleaded when a search of the Self-Insurance Fund's records revealed that Johnson had settled a previous claim with KNI for 12 ½ percent permanent general disability for a slip-and-fall induced back injury suffered in November 1974. She had been off work for one month after the first injury and then had returned to work with no symptoms until the second injury approximately seven and a half years later.

At the hearing on the present injury before the ALJ, the contested issues were the nature and extent of Johnson's disability and whether KNI had knowingly retained a handicapped employee. George Welch, the director of the State Self-Insurance Fund, testified that he had approved Johnson's settlement in 1974, knowing she was likely to continue to have back problems. The ALJ awarded Johnson compensation based on a finding of a 95 percent permanent partial general work disability. The ALJ held: (1) that KNI had met its burden of showing knowing retention of Johnson because Welch was an employee of the State and his knowledge could be imputed to KNI, and (2) that the 1974 injury contributed 30 percent to the 1982 injury. He assessed 30 percent of the award against the Fund.

The Fund requested that the Director review the decision. The Director affirmed the finding of 95 percent work disability, but reversed as to the Fund's liability. The Director found that KNI had imputed knowledge but, since Johnson's preexisting disability was not demonstrably disabling, KNI had the burden of persuasion that it had a reservation when it retained the handicapped employee. Finding no evidence of such reservation, the Director concluded no portion of the award could be assessed against the Fund.

The State Self-Insurance Fund appealed to the Shawnee County District Court. The district court adopted the rulings of the ALJ as modified by the Director. KNI appealed the finding that it had not shown reservations about retaining the handicapped claimant. The Fund did not cross-appeal the district court's finding that knowledge of claimant's preexisting condition was imputable to KNI. On appeal, the Court of Appeals, however, considered whether George Welch had knowledge which was imputable to KNI. *Johnson v. Kansas Neurological Institute*, 11 Kan. App. 2d 161, 716 P.2d 598 (1986). The Court of Appeals stated:

"We need not reach consideration of what respondents here consider to be a troublesome application of the reservation concept. Assuming Welch's testimony is sufficient to show knowledge, as we must on review, we nonetheless must disagree with the respondents' legal conclusion that that knowledge must be imputed to KNI." 11 Kan. App. 2d at 162-63.

The court went on to say that neither the cases nor the evidence require the conclusion that the director of the State Self-Insurance Fund was an agent of KNI for the purpose of imputing knowledge to KNI. It concluded that the district court was correct in holding that the Fund was not liable, even though the court reached that conclusion for the wrong reason.

KNI contends that the ALJ, the Director, and the district court all held that the claimant's employer had imputed knowledge of claimant's preexisting condition. KNI appealed the rulings adverse to it, but the Fund did not cross-appeal the finding that knowledge of the handicap was imputed to the employer. KNI argues that the Court of Appeals incorrectly based its decision on an issue not appealed and it never considered the issues raised on appeal.

K.S.A. 60-2103(h) provides:

"When notice of appeal has been served in a case and the appellee desires to

have a review of rulings and decisions of which he or she complains, the appellee shall within twenty (20) days after the notice of appeal has been served upon him or her and filed with the clerk of the trial court, give notice of his or her cross-appeal."

K.S.A. 60-2103(h) requires appellees to cross-appeal adverse rulings to obtain appellate review of those issues. *Douglas v. Lombardino,* 236 Kan. 471, 490, 693 P.2d 1138 (1985); *Chetopa State Bancshares, Inc., v. Fox,* 6 Kan. App. 2d 326, 334, 628 P.2d 249, *rev. denied* 229 Kan. 669 (1981). Timely filing of a cross-appeal is jurisdictional. *Haas v. Freeman,* 236 Kan. 677, 684, 693 P.2d 1199 (1985).

Appellate courts serve two quite different functions. The appellate court reviews the trial record for error in the particular case. It also uses the case before it as a vehicle for stating and applying constitutional principles, for authoritatively interpreting statutes, or for formulating and expressing policy on legal issues of state-wide concern.

Appellate courts should be reluctant to interfere with the course of litigation determined in the trial courts or administrative hearings. Deference to the lower court or the administrative process usually precludes review of issues other than those presented at the trial or the hearing. The rule limits reviewing courts somewhat from raising legal issues *sua sponte.*

Three exceptions to the general rule that reviewing courts will not consider on appeal issues not raised in the trial court or the administrative hearing are:

(1) Cases where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case;

(2) cases where consideration of a question raised for the first time on appeal is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

(3) cases where a judgment of a trial court may be upheld on appeal even though the court may have relied on the wrong ground or assigned a wrong reason for its decision. See *State v. Puckett,* 230 Kan. 596, 598-99, 640 P.2d 1198 (1982).

The Court of Appeals' stated exception for raising the issue *sue sponte* was that the district court had "relied upon a wrong ground or assigned an erroneous reason for its decision."

The Court of Appeals never decided that the district court was wrong when it determined there had been no "reservation."

Without notice to the parties, it chose to determine *sua sponte* whether knowledge of the prior injury was imputed from one state agency to another, an issue that was not appealed. Where an appellate court raises a new issue *sua sponte,* counsel for all parties should be afforded a fair opportunity to brief the new issue and to present their positions to the appellate court before the issue is finally determined. *State v. Puckett,* 230 Kan. at 601.

We agree with the appellants that the Court of Appeals erred when it disregarded the "reservation" issue on appeal and determined *sue sponte* that the knowledge of the prior injury to the worker was not imputed from one state agency to another state agency.

Because this court granted the petition for review, we have jurisdiction to hear the appeal and the authority to determine the appropriate issues presented on appeal. *State v. Galloway,* 238 Kan. 100, 708 P.2d. 508 (1985).

KNI contends that the district court erred in holding that the Fund was not liable for any of the award, as KNI had failed to show a "reservation with respect to hiring or retaining the claimant."

K.S.A. 1985 Supp. 44-567(b) provides:

"In order to be relieved of liability under this section, the employer must prove either that the employer had knowledge of the preexisting impairment at the time the employer employed the handicapped employee or that the employer retained the employee in employment after acquiring such knowledge. The employer's knowledge of the preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof with regard thereto. If the employer, prior to the occurrence of a subsequent injury to a handicapped employee, files with the director a notice of the employment or retention of such employee, together with a description of the handicap claimed, such notice and description of handicap shall create a presumption that the employer had knowledge of the preexisting impairment."

Under the statute, the employer has the burden of proving that it knowingly employed or knowingly retained in its employ a handicapped worker. Whether the worker's impairment is of such a character as to constitute a handicap in obtaining employment is a question of fact, and the burden of proof rests with the party claiming it had knowledge that a handicap existed. *Hinton v. S.S. Kresge Co.,* 3 Kan. App. 2d 29, Syl. ¶ 3, 592 P.2d 471 (1978), *rev. denied* 225 Kan. 844 (1979).

The determination of whether an employer had knowledge of a worker's handicap is made on a case-by-case basis. *Oates v.*

*Post & Danley Truck Lines,* 3 Kan. App. 2d 337, 339, 594 P.2d 684 (1979). Knowledge of a particular accident or injury is not necessarily knowledge of an impairment to an employee that constitutes a handicap. *Hinton v. S.S. Kresge Co.,* 3 Kan. App. 2d at 33. An impairment need not be demonstrably disabling to the worker as long as it gives rise to a reservation in the mind of an employer in deciding to hire or retain the employee. *Carter v. Kansas Gas & Electric Co.,* 5 Kan. App. 2d 602, 606, 621 P.2d 448 (1980).

In the present case, the evidence was undisputed that Johnson did not exhibit any symptoms for many years after her first injury. After the worker returned to work, she continued to do the same physical activities, including lifting, bending, and stooping, as before. The record supports the finding that KNI had no reservation when it retained Johnson as an employee.

Next, KNI argues that the court should overthrow the reservation concept, which, according to KNI, is unworkable because it causes employers to violate the Kansas Act Against Discrimination. This issue was not raised below and, therefore, cannot be considered on appeal. *Lostutter v. Estate of Larkin,* 235 Kan. 154, 166, 679 P.2d 181 (1984).

KNI contends that there was not sufficient competent evidence to justify a finding of 95 percent permanent partial general work disability as to Johnson. It asserts that the finding is unsupported by the medical testimony, and the method of determining the percentage of permanent partial disabilty by the rating physican must be shown by a mathematical formula.

The scope of review in workers' compensation cases was explained in *Box v. Cessna Aircraft Co.,* 236 Kan. 237, 241, 689 P.2d 871 (1984):

"Judge Abbott has summarized the scope of appellate review in workers' compensation cases in the recent case of *Harris v. Cessna Aircraft Co.,* 9 Kan. App. 2d 334, 678 P.2d 178 (1984), as follows:

" 'If this court finds there is substantial competent evidence to support the finding of the trial court, the judgment will not be disturbed on appeal. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313 (1975); *Boyd v. Yellow Freight Systems, Inc.,* 214 Kan. 797, 522 P.2d 395 (1974). Such evidence is defined as that which is relevant and which carries enough weight to allow one to conclude that the judgment is proper. *Hardman v. City of Iola,* 219 Kan. 840, 549 P.2d 1013 (1976). In determining whether the evidence is substantial and competent, the record is viewed in a light most favorable to the prevailing party. *Makalous v. Kansas State Highway Commission,* 222 Kan. 477, 565 P.2d 254

(1977); *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, 558 P.2d 146 (1976). If the evidence is substantial and competent, the ruling will be upheld even if there is evidence of record which supports contrary findings. *Phillips v. Helm's Inc.,* 201 Kan. 69, 439 P.2d 119 (1968).' "

K.S.A. 44-510e defines permanent partial general disability as a nonscheduled disability which is partial in character but permanent in quality. The extent of the permanent partial general disability is "the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury has been reduced." K.S.A. 44-510e. Under our case law, the "pivotal question" in quantifying the extent of permanent partial general disability is what portion of claimant's job requirements is he now unable to perform because of his injury. *Houston v. Kansas Highway Patrol,* 238 Kan. 192, 708 P.2d 533 (1985).

There is substantial competent evidence contained within the record to support the 95 percent work disability rating as found by the Director and adopted by the district court. We have no jurisdictional power to require that the doctors who evaluated claimant determine the extent of the permanent partial general disability and express by a mathematical formula how they arrived at that figure. The power to require the rating physician to explain his method of determining the percentage of general disability of a handicapped worker belongs to the legislature, not the courts.

The judgment of the Court of Appeals is affirmed as modified and the district court is affirmed.